MAX PHILLIPS, Appellant, v. WEST ROCKAWAY LAND
COMPANY et al., Respondents.

**Vendor and purchaser —where owner of land extending
to ocean front sells part thereof as " ocean front property "
he subjects the remaining part to an easement in favor of the
part sold.**

Defendant's agent having been advised that plaintiff, a prospective purchaser, was only interested in ocean front lots, took him on the land for the purpose of showing him ocean front lots, pointed them out, told h'm they were the nearest lots to the ocean for sale, and made the statement that there would be nothing between them and the ocean save a boardwalk. The map then in custody of defendant's agent and the physical situation of the property clearly indicated the lots as ocean front lots. It contained an inscription which read " all right, title and 'nterest in and to the Beach front reserved to the West Rockaway Land Co." The plaintiff in reliance upon the statements made to him and the situation and location pointed out to him purchased the lots, and thereafter defendant stood by silently, and observed plaintiff erect his cottage facing the ocean. Later defendant platted the land between the proper'y of plaintiff and the ocean into lots extending beyond mesne high-water mark and offered the lots, including " ocean front " lots for sale thereby asserting a right to effectually injure plaintiff's property by depriving him of ocean front lots and leaving his cottage facing not the ocean or a boardwalk but the side of a building which may be erected immediately south of his cottage. *Held*, that at time of the sale and as part of the same transaction defendant subjected the land south of plaintiff's lots to a permanent, open and continuous service or easement in favor of the part sold to plaintiff, save that defendant might erect a boardwalk thereon, and that defendant was thereafter equitably estopped from asserting a right to sell the lands south of plaintiff's lots.

*Phillips* v. *West Rockaway Land Co.*, 177 App. Div. 260, reversed.

(Argued March 13, 1919; decided July 15, 1919.)

APPEAL from a judgment of the Appellate Division of
the Supreme Court in the second judicial department,
entered March 29, 1917, unanimously affirming a judgment
in favor of defendants entered upon a dismissal of the
complaint by the court on trial at Special Term.

The material facts found by the trial justice are as follows: In April, 1912, the West Rockaway Land Company, hereinafter called the Land Company, owned a large tract of land, lying in Rockaway point between the ocean and Jamaica bay, which it was offering to purchasers. It had made and filed a map showing the plots laid out into several hundred lots, respectively about twenty by one hundred feet, divided by streets and avenues, and had employed one May as a broker to secure purchasers. Late in April, 1912, plaintiff communicated with May on the subject of purchasing " ocean front " lots. He with his wife, a friend and May went upon the land, and May showed plaintiff three lots on Southampton avenue which were for sale at an aggregate price of $2,775. Plaintiff told May he wanted lots fronting on the ocean and would consider no others. May told him these were the lots nearest the ocean which were offered for sale, and that there would be nothing between them and the ocean except a boardwalk. The parties paced off sixty feet to show the location of the lots. They lay at the end of Southampton avenue as graded, paved, curbed and improved by sidewalks and there was nothing between them and the ocean, one hundred fifty-six feet distant at mesne high-water line, except sand. May also exhibited to plaintiff a map, which along the southerly side of the property had the words printed thereon, " all right, title and interest in and to the Beach front reserved to the West Rockaway Land Co." The defendant at that time was considering the construction of a boardwalk along the ocean front and was reserving the land near the ocean for that purpose. The president of the defendant company had told May that such was the intent of the company; and May, acting in good faith, told the plaintiff that his lots were nearest to the ocean of the lots that were offered for sale, and that there would be nothing between them and the ocean except a boardwalk. The plaintiff paid

May $277.50 as a deposit, believing that he was buying ocean front property and that there would be nothing between the lots and the ocean except a boardwalk.

Thereafter a contract was mailed by the defendant to the plaintiff who signed and returned it. The lots were described in the contract as Nos. 31, 32 and 33 in block 66 on a map which was not the map exhibited to plaintiff by May; they were also described as on the westerly side of Southampton avenue, 613 48/100 feet from Washington avenue. The contract provided for a deed containing restrictions on the use of the land with the following proviso: " but shops, stores, hotels, club houses," etc., " may be built on plots heretofore or hereafter " selected for such uses by the party of the first part as well as private residences, or the whole or any " part of the land still owned by party of the first part lying south of a line drawn parallel with and distant four hundred (400) feet south of the southerly side of Washington avenue, and the whole or any part of the land still owned by the party of the first part lying north of a line drawn parallel with and distant 1,200 feet north of the northerly side of Washington avenue may be developed, built on and used on plans similar to the plans of development, or along the lines of development at Atlantic City, New Jersey."

On July 5th the contract was closed and the plaintiff took title. He received a deed conveying the lots in accordance with a map designated as " C " of the tract, filed in the office of the clerk of Queens county, which designated the lots by numbers and block, and gave the point of beginning the westerly side of Southampton avenue, 613.48 feet southerly from the corner formed by the intersection of the southerly side of Washington avenue, the lands conveyed being sixty feet front on Southampton avenue and one hundred feet deep.

The trial justice further found " that Map C is not a true and correct description of the property lying to

the south of the said lots sold and conveyed by defendants to the plaintiff, in that there was not at the time of purchase nor at any. time thereafter four hundred forty feet of land or shore lying between the southerly line of plaintiff's property and .mesne high water line of the Ocean; and that the said distance was not more than one hundred fifty-six feet."

That at the time the streets of said tract were improved by the laying of sidewalks, pavements, curbs and grading of streets to a point 156 feet from mesne high-water mark; that the lots purchased by plaintiff were located at the corner formed by Southampton avenue at the point where the street improvement thereon ended and the beach front; that the southerly line of plaintiff's property then and now is 156 feet distant from mesne high-water mark.

Plaintiff thereafter erected upon the lots a dwelling fronting on the ocean at a cost of $8,425.02, in addition to the $2,775 paid for the lots, making a total expenditure of $11,200.02.

The trial justice also found that there was no intent on the part of the defendant nor May to deceive the plaintiff; but that he was misled by the physical appearance of the property and its relation to the ocean, by the statement made by May, and by the words on the map above quoted, into believing that he was buying lots between which and the ocean there would be no obstruction except a boardwalk.

Thereafter in July, 1915, the defendant platted the land on the ocean front between the property sold plaintiff and extending beyond mesne high-water mark and offered the same at public sale. The advertisement contained the statement that " with each ocean front plot sold will be conveyed all right, title and interest of the owner in and to the land lying south thereof so far as such rights extend."

According to the map, the defendant offered for sale

eight lots 20 by 100 feet lying between plaintiff's premises and the ocean and extending below mesne high-water mark. The lots offered for sale if built upon or used for private purposes will prevent the free and uninterrupted egress and ingress from and to the southerly or front part of plaintiff's premises and the shore, beach and ocean, and will obstruct the view of the ocean from plaintiff's property and deprive him of the use of the beach as a highway and materially depreciate the value of his property.

The plaintiff brought this action to have it adjudged that the lands south of his property be held permanently subject to an easement and right of ingress and egress in favor of his land, that defendants be enjoined from selling or using any of said land for building, structural or other private purpose, from preventing plaintiff or his successors from having a free and uninterrupted right of ingress and egress from his lands to the ocean, from interfering with or obstructing the sea view from his plot and for a reformation of the deed to include the alleged agreement of the parties.

As matters of law, the trial justice determined that plaintiff was not entitled to any easement appurtenant to his property over the land offered for sale lying directly between his property and the ocean; that there was no dedication of the land lying between plaintiff's property and the ocean to the purposes of a boardwalk; that plaintiff was not entitled to a reformation of his contract, and ordered judgment for defendant.

*Benjamin Reass, Hugo Hirsh* and *Emanuel Newman* for appellant. The sale of the property in suit having been made with direct reference to a map which showed the beach front as a public highway constitutes a dedication thereof, to which surrounding lot owners have an easement which they can enforce in equity. (*Lord v. Atkins,* 138 N. Y. 184; *Tibbits v. Cumberson,* 39 Hun,

456; *Kerrigan* v. *Backus,* 69 App. Div. 329; *Kenyon* v. *Hookway,* 21 App. Div. 342; *White* v. *Moore,* 73 Misc. Rep. 96; *Watertown & White* v. *Cowen,* 4 Paige, 510; *Hills* v. *Miller,* 3 Paige, 254; *Pratt* v. *Buffalo Railway Co.,* 19 Hun, 30; *Lowenberg* v. *Brown,* 79 App. Div. 414; *Feldblum* v. *Laurelton Land Co.,* 151 App. Div. 24.) The defendants are chargeable for representations made by the broker. (*Bennett* v. *Judson,* 21 N. Y. 238; *Krumm* v. *Beach,* 96 N. Y. 398; *Mayer* v. *Dean,* 115 N. Y. 556; *Oehlhof* v. *Solomon,* 73 App. Div. 329.) The maps, like written agreements, should be construed in the light of the surrounding circumstances. (*Maloney* v. *Iroquois Brewing Co.,* 173 N. Y. 310; *Gillette* v. *Bank of America,* 160 N. Y. 555.)

*Grant C. Fox* and *Joseph A. Byrne* for respondents. The court has no power to make a new contract for the parties and its jurisdiction to reform a written contract depends upon the existence of fraud or mutual mistake, the proofs of which must be of the most substantial and convincing character. (*C. S. Ry. Co.* v. *T. T. St. Ry. Co.,* 149 N. Y. 51; *Mead* v. *W. F. Ins. Co.,* 64 N. Y. 453; *Bryce* v. *L. F. Ins. Co.,* 55 N. Y. 240; *Curtis* v. *Albee,* 167 N. Y. 360; *Southard* v. *Curley,* 134 N. Y. 48; *Allison Brothers Co.* v. *Allison,* 144 N. Y. 21.)

HOGAN, J. Though two parties were named as defendants in this action, a stipulation was entered into upon the trial that if the plaintiff was entitled to relief against defendant West Rockaway Land Company he would be entitled to relief against both defendants named in the complaint.

The finding of the trial justice that there was no intent on the part of defendant or its broker, Mr. May, to deceive plaintiff together with the fact that defendant had informed May of its intention to construct a boardwalk, and the statement made by May to plaintiff that

other than a boardwalk there would be nothing between the lots pointed out and the ocean, necessarily results in a conclusion that May gave to plaintiff the information imparted to him by defendant which in good faith the defendant at that time intended to carry out.

The plaintiff was interested only in ocean front lots and would not consider any other site.  May having in the first instance been advised of that fact took plaintiff on the land as we must assume from the findings for the purpose of showing him ocean front lots, pointed them out, told plaintiff they were the nearest lots to the ocean for sale, and made the statement relating to the absence of anything between them and the ocean save a boardwalk.  The map then in custody of May and the physical situation as to streets improved, etc., ending at the southerly lot clearly indicated the lots as ocean front lots.  The plaintiff in reliance upon the statements made to him and the situation and location pointed out to him purchased the lots, paying therefor $2,775.  The defendant accepted and retained the fruits of the services of May and the acts of the latter are imputable to defendant.

Stress is laid upon the inscription appearing on the map shown to defendant which read " all right, title and interest in and to the beach front reserved to the West Rockaway Land Co."  The inquiry is pertinent, what did the defendant intend by that inscription?  The plan of defendant at that time was to erect a boardwalk.  Plaintiff so advised, made no objection to the lots on that account.  Was not that inscription placed upon the map for the purpose of reserving the right to construct such walk?  If such was not the intention and purpose of defendant, but on the contrary the inscription was placed on the map with a view of reserving to defendant a right to sell the property for building purposes, clearly the defendant and May did intend to

33

deceive the plaintiff as the latter had been assured that only a boardwalk would at any time exist between the lots sold and the ocean. In view of the finding of absence of intention on part of defendant and May to deceive the plaintiff, it must follow that plaintiff would be justified in a belief that the inscription was intended as a reservation of that part of the land for the purpose of a boardwalk alone.

Immediately after plaintiff took title to the lots on July 5, 1912, and paid defendant $2,775 for same, he erected a cottage fronting the ocean, siding on the street, and expended on same $8,425.02. Defendant not only accepted plaintiff's money, $2,775, for what was represented to him to be, and gave every indication of being in fact, "ocean front" lots, but stood by silently, observed plaintiff erect his cottage facing the ocean, occupy the same for three seasons with an unobstructed view of the ocean, and in July, 1915, experienced a change of mind, concluded to abandon the project and thereupon platted the land between the property of plaintiff and the ocean into lots extending even beyond mesne high-water mark, offered the lots, including "ocean front" lots for sale, thereby asserting a right to effectually injure plaintiff's property by depriving him of ocean front lots and leaving his cottage facing not the ocean or a boardwalk but the side of a building which may be erected immediately south of his cottage.

Such act on the part of the defendant is irreconcilable with the representations made by defendant and its broker to the plaintiff upon which the latter relied and acted.

The trial justice as conclusion of law held that there was no dedication of the land lying between plaintiff's property and the ocean to the purpose of a boardwalk. The conclusion I have indicated from the inscription on the map and the conduct of the defendant would be more consonant with the facts as found, but whether there was or was not a dedication of the land to the

purposes of a boardwalk is immaterial. The defendant as an inducement to plaintiff to purchase the lots represented that there would not be anything between the lots sold and the ocean except a boardwalk, and by reason of its declarations and reliance of plaintiff thereon the latter purchased what was represented to him as ocean front lots, parted with $2,775, which defendant has in its possession, and thereupon expended upwards of $8,000 for a cottage thereon. Defendant on the day of the sale of the lots was the owner of the lots and of the sand shore south of same to high-water mark. At time of the sale and as part of the same transaction defendant subjected the land south of plaintiff's lots to a permanent, open and continuous service or easement in favor of the part sold to plaintiff, save that defendant might erect a boardwalk thereon. Defendant was thereafter equitably estopped from asserting title to and a right to sell the lands south of plaintiff's lots. (*Trustees, etc., v. Smith,* 118 N. Y. 634; *Matter of Franckel,* 157 N. Y. 603; *Rogers v. Salmon,* 8 Paige, 559; *Lampman v. Milks,* 21 N. Y. 505.)

It is a familiar principle that a court of equity having obtained jurisdiction of the parties and the subject-matter of the action will adapt its relief to the exigencies of the case. (*Valentine v. Richardt,* 126 N. Y. 272.) The facts of this case clearly justify the application of that principle.

The conclusions of law are not sustained by the facts found and the judgments below should be reversed and a new trial granted, costs to abide the event.

HISCOCK, Ch. J., CARDOZO, McLAUGHLIN and ANDREWS, JJ., concur; CHASE and POUND, JJ., dissent.

Judgment reversed, etc.