FRANCIENE HOFMANN, Plaintiff, *v.* MAX H. HOFMANN, SUNWOOD HOMES, INC., ISIDOR I. FAGIN, PAUL MANTON, C. B. ROSS COMPANY, INC., PERCY URIS and REGENCY GARDEN APARTMENTS, INC., Defendants.

Supreme Court, Westchester County, March 30, 1939.

*Arthur H. Ellis*, for the plaintiff.

*Bleakley, Platt & Walker*, for the defendants C. B. Ross Company, Inc., Percy Uris and Regency Garden Apartments, Inc.

*Jacob A. Bernstein*, for the defendants Sunwood Homes, Inc., Isidor I. Fagin and Paul Manton.

J. ADDISON YOUNG, Official Referee. The above is one of twelve separate actions brought by home owners in the city of Mount Ver-

non against the same defendants, above named. These actions were consolidated and tried as one. In each of the said actions it is sought to reform the deed conveying the property in question and for an injunction preventing the erection of any apartment or tenement building upon property adjoining that of the plaintiff, and it is also sought to impose an equitable restriction against the erection of any such apartment or tenement house.

The defendant Sunwood Homes, Inc., was incorporated in 1935, and the defendant Paul Manton and Isidor I. Fagin were its only directors and stockholders. Manton held a majority of the stock and he and Fagin were partners in the venture.

In or about November, 1935, Sunwood Homes, Inc., purchased certain property in the city of Mount Vernon, described as lots 53, 54, 77, 78, 79 and 80 on a map entitled " Map of Fleetwood, Town of Eastchester, Westchester County, New York," filed in the office of the register of Westchester county on March 7, 1854, as Map No. 233. This map is plaintiff's Exhibit 3.

At this time the defendant Sunwood Homes, Inc., also acquired an option to purchase lots described as 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 49, 51, 52, and also a gore to the northwest of lot 49, all shown on said map. In September, 1936, Sunwood Homes, Inc., exercised its option and became the owner of the property above referred to. Soon after Sunwood Homes, Inc., exercised this option, and became the owner of the property last referred to, it opened a street known as Villa street in said property for· a distance of 250 feet west of Westchester avenue, as shown on said map. Shortly after Sunwood Homes, Inc., had made its first purchase in 1935, it began the construction of five houses on said property, four of which fronted on Westchester avenue and one on Cedar street. These houses were entirely completed by June, 1936. It also built another house to the order of a purchaser by the name of Abramovitz, one of the plaintiffs here, and this was completed in the fall of 1936. These six houses had all been sold to different persons by October, 1936. Four other houses also were completed by November, 1936, located on Westchester avenue. A third group of seven houses were also built and finished by June of 1937. These seven houses front on Villa and Cedar streets.

The proof shows beyond question that, when the twelve plaintiffs purchased their homes from among these houses, it was represented to them by Manton and Fagin that the tract of land owned by Sunwood Homes, Inc., purchased as above set forth, was to be developed and used exclusively for residential purposes. These representations were not only made orally to the prospective purchasers by Manton and Fagin, but were made by many advertisements, circulars and pamphlets put out by them and circulated

among prospective purchasers including the plaintiffs. This literature described the property and set forth in detail the plan of development. The pamphlet set forth that the section was to be devoted to private residences bordering upon " a two-acre expanse of undulating greensward, dotted with sweet-scented fruit-trees, extending far across to like dwellings of neighbors on the distant rim of this private park." The development was extensively advertised in the newspapers and the advertisements stressed the fact that the development was to be built all around a private park. Some of this advertisement was illustrated showing a plan of development with houses on the four sides of the property in question. The advertisement set forth that the scheme of development was that there would be a private park inclosed by one-family homes, virtually making each home an estate with a private park for a background located in a delightfully rural atmosphere and stating that the grounds were to be beautifully landscaped, surrounding a private park. One of the advertisements stated: " A decided innovation in home planning — custom built houses, finely styled, well built and authentic colonial atmosphere, so placed around a great hollow square of gardens and play space and park, that every home owner has, at his own back door, all the benefits of a private estate, secluded and quiet." " The huge gardened park of nearly eight acres, for instance, around which, European fashion, these few fine homes are being built." " They're located in a delightfully rural atmosphere — each house sets on a large landscaped plot — backing up on a private park — actually making your home a miniature estate." " Each house stands by itself on a beautifully landscaped plot — with a private park for a backyard. Located in the exlusive Fleetwood section of Mount Vernon — a delightfully rural atmosphere "— " suburban living at its best "— " send for our illustrated booklet."

In the Mount Vernon *Daily Argus* of April 22, 1937, there was inserted by Sunwood Homes, Inc., an advertisement (Plaintiffs' Exhibit 17), illustrated with a diagram showing houses built *on all four sides of a landscaped park*. The text in connection with this advertisement reads in part: " The unique scheme of planning which has placed these houses 'round a private park, actually makes your home an estate. It offers a safe wholesome place for children to play, away from City traffic — located in a delightfully rural atmosphere."

A number of the plaintiffs testified also that they particularly asked about the possibility of an apartment house being built on any part of the tract of land in question. These purchasers inspected the property before signing contracts and saw the entire tract and noticed certain apartment houses in the neighborhood, and

they inquired whether there was any possibility that any part of the tract of land would be subsequently used for such purpose, and they were assured by Manton and Fagin that no part would ever be used for any such purpose. These purchasers stated to the owners that they were purchasing to get out of apartment houses, and were extremely anxious to get their homes in a strictly residential community.

The testimony shows clearly that these plaintiffs purchased their homes relying upon these representations. None of the contracts or deeds, however, contain covenants on this subject. Apparently, all the plaintiffs continued to live contentedly and satisfied with their purchases until it became known that, on August 2, 1938, a deed had been made by the defendant Sunwood Homes, Inc., to the defendant Regency Garden Apartments, Inc., conveying parts of lots 82 and 83 and all of lots 84, 85, 86, 87, 88, 89 and 90 on said map. It is conceded that this transfer was made for the purpose of erecting a large apartment house on the property specified, and it was also shown that Paul Manton, who controlled Sunwood Homes, Inc., is an officer and director of the new corporation and owns fifty per cent of the stock thereof. The plans for this apartment house were received in evidence. The actions referred to were brought soon after the transfer to the Regency Garden Apartments, Inc., became known.

The plaintiff relies principally upon the doctrine laid down in *Phillips* v. *West Rockaway Land Co.* (226 N. Y. 507). In that case the defendant's agent took the plaintiff, who was a prospective purchaser of ocean-front lots, to the land which was for sale. He pointed out the lots to the plaintiff and told him they were the nearest lots to the ocean for sale and also told him that there would be nothing between those lots and the ocean save a boardwalk. There was a map in the custody of the defendant's agent which clearly indicated the lots as ocean-front lots and contained an inscription which read: " All right, title and interest in and to the Beach front reserved to the West Rockaway Land Co." The plaintiff, in reliance upon the statements made to him and the situation and location pointed out to him, purchased the lots and thereupon erected his cottage facing toward the ocean, all of which the defendant was aware of. Later on the defendant plotted the land between the property of the plaintiff and the ocean into other lots and offered these lots as ocean-front lots, thereby depriving the plaintiff of his rights to ocean-front lots and leaving his cottage facing, not the ocean, but the side of a building, which might be erected immediately south of plaintiff's cottage. Plaintiff's deed contained no covenant on the subject. He, however, brought an

action in equity to restrain the defendant from selling the newly-platted lots in front of plaintiff's property. Upon the trial, judgment was given in favor of the defendant, which judgment was affirmed by the Appellate Division, but, upon appeal to the Court of Appeals, that court reversed the judgment below and granted a new trial, and in the opinion stated as follows:

" The defendant as an inducement to plaintiff to purchase the lots represented that there would not be anything between the lots sold and the ocean except a boardwalk, and by reason of its declarations and reliance of plaintiff thereon the latter purchased what was represented to him as ocean front lots, parted with $2,775, which defendant has in its possession, and thereupon expended upwards of $8,000 for a cottage thereon. Defendant on the day of the sale of the lots was the owner of the lots and of the sand shore south of same to high-water mark. At time of the sale and as part of the same transaction defendant subjected the land south of plaintiff's lots to a permanent, open and continuous service or easement in favor of the part sold to plaintiff, save that defendant might erect a boardwalk thereon. Defendant was thereafter equitably estopped from asserting title to and a right to sell the lands south of plaintiff's lots. (*Trustees, etc.,* v. *Smith,* 118 N. Y. 634; *Matter of Frankel,* 157 N. Y. 603; *Rogers* v. *Salmon,* 8 Paige, 559; *Lampman* v. *Milks,* 21 N. Y. 505.)

" It is a familiar principle that a court of equity having obtained jurisdiction of the parties and the subject-matter of the action will adapt its relief to the exigencies of the case. (*Valentine* v. *Richardt,* 126 N. Y. 272.) The facts of this case clearly justify the application of that principle."

The defendants' counsel, while recognizing the doctrine of this case, seeks to distinguish it from the facts of the present case. It is asserted that the principle of the *Phillips* case is not applicable here because no map was ever filed by the defendant Sunwood Homes, Inc., showing any uniform plan of development, and that the deeds to the purchasers in the present case did not include any reference to any such map, the fact being that the deeds all referred to the old map of Fleetwood made in 1854, and the descriptions showing that each conveyance only included a portion of one or more of such lots, and, further, that no map was exhibited to any of these twelve plaintiffs showing any such layout by the defendant, and, finally, that there was no map in the present case such as appeared in the *Phillips* case, containing a statement that the defendant reserved any right, title and interest in any part of the present tract of land. In my opinion, the filing of a map is not essential to establish a uniform plan. Of course, when a map is filed containing a layout of property for development, it is an

important circumstance, as showing a representation of a uniform plan, but I am convinced that such a plan may be plainly shown in other ways. Here, we have all the literature put out by the defendant, newspaper advertisements, pamphlets, circulars and oral representations, together with the actual physical development of the property by the defendants so far as it was developed in accordance with such plan, all, it seems to me, showing clearly that the plan was to develop this entire tract with private dwellings only and that the plan was that these houses were to be built around a square so that the owners would enjoy the benefits of a public park.

It would be hard to find a case where the evidence so conclusively shows a plan of development of real property explained in great detail for the purpose of inducing the public to purchase. It was clearly conveyed to the would-be purchasers that the whole tract was to be developed for residential purposes and even the particular method of locating the houses on the tract was clearly explained, so that the home owners would have the benefit of a public park resulting from the manner of development.

In my opinion, the principle of the *Phillips* case applies here, and the plaintiffs are entitled to judgment which will prevent the defendants from using any part of the property in question for the erection of an apartment house.

Settle decision on notice.