Wachtler, J.
The plaintiffs-respondents own residential properties in a tract known as Castle Estates in the Town of New Hartford, New York. The Castle Estates development *429 consists of some 126 one- and two-family homes which were erected by the defendant-appellant on property that it owned. The homeowners took title to their respective houses by deeds dated August 13, 1968 and November 22, 1968. These deeds were executed by the developer and contained no metes and bounds dimensions of the lots; rather the deeds referred to the property by lot and section number of Castle Estates as shown on a duly filed plat map which the deed incorporated by reference. These conveyances were made "subject to all restrictions, covenants, easements and rights-of-way of record.”
At issue here is the legal and equitable effect of these deeds and the plat map; specifically, whether these homeowners may impose a negative easement upon adjoining land by virtue of a notation found on the plat map.
The plat map in question encompassed section VI of the Castle Estates subdivision and showed the definitive boundaries of the lots, the streets and utilities, and the set-back lines for the houses. The map also included the land across the street from the homeowners’ property which was also owned by Castle Estates and, for convenience, will be referred to as the Ibbotson property. Significantly, the Ibbotson property was identified on the plat in the following manner:
"CASTLE ESTATES INC. R-2 ZONING”
In 1968 "R-2” was the existing zoning for section VI and permitted the construction of two-family residences. Sometime during the next year, the Town of New Hartford conducted a general zoning revision of all property within the town which resulted in changing the Ibbotson property from "R-2” (residential) to "B-2” (commercial).
On November 18, 1971 Castle Estates, Inc. entered into a contract with Ibbotson Motors, Inc. for the sale of the tract across the street from the plaintiffs’ residences. A few months later Ibbotson applied for a building permit to erect an automobile showroom and repair facility on the Ibbotson property. The plaintiffs objected to this use of the property and instituted this action against Castle Estates seeking to enjoin them from using the Ibbotson property for any purpose other than residential, and from conveying these premises to any purchaser for other than residential purposes.
At trial, the plaintiffs contended that a negative equitable easement restricting the Ibbotson tract to residential use had *430 been created in their favor by virtue of the "R-2 Zoning” notation on the plat map and the oral. representations as to future residential development made to them by one Robert Kenny, the president of Castle Estates, Inc. The defendant raised, inter alia, the affirmative defense of the Statute of Frauds and the parol evidence rule. The trial court concluded that the Statute of Frauds requirement had not been satisfied here, nor was the theory of equitable estoppel established so as to circumvent the requirement of a writing.
The Appellate Division reversed in a three-two decision (44 AD2d 25), finding that the deed coupled with the "R-2 Zoning” notation on the plat map was a sufficient written memorandum to satisfy the Statute of Frauds and that any ambiguity was resolved by the testimony of plaintiffs’ witnesses as to Mr. Kenny’s representations. The dissenters urged that there was a lack of clear proof as to intention, noting that had the plaintiffs placed any importance on the future development of the Ibbotson lot they would have sought more formal assurances by way of an explicit writing. We agree with the result reached by the trial court and would reverse.
At the outset wé note that the policy of the law is to favor the free and unobstructed use of realty (Premium Point Park Assn. v Polar Bar, 306 NY 507) and that covenants restricting the use of property will be strictly construed against those seeking to enforce them (Buffalo Academy of Sacred Heart v Boehm Bros., 267 NY 242). The burden of proof is on the party endeavoring to enforce a restrictive covenant and must be met by more than a doubtful right (Single v Whitmore, 307 NY 575). Only where it has been established by clear and convincing proof will our court impose such a restriction. Here despite the fact that incorporation by reference of a plat map may create an easement expressly or by implication, the homeowners have failed to satisfy that burden.
A negative easement is one which restrains a landowner from making certain use of his land which he might otherwise have lawfully done but for that restriction (Trustees of Columbia Coll. v Lynch, 70 NY 440). Such easements arise principally by express grant or by implication (see, generally, Thompson, Real Property [1961 ed], §§ 330, 382). If established expressly, a negative easement must comply with the requisites of the Statute of Frauds (General Obligations Law, § 5-703; Wiseman v Lucksinger, 84 NY 31; H. H. Apts. v Beachcliff Realty Corp., 8 NY2d 760).
*431 While a conveyance with reference to a plat map may comprise a written memorandum sufficient to satisfy the Statute of Frauds (Seamans v Gulf Refining Co., 237 App Div 202, affd 264 NY 433) this is only true where the agreement is subscribed and contains all the terms of the agreement so as to manifest a definite intent to create the restriction. Thus, in Spinella v Rindenello (19 NY2d 1010) we recognized an easement arising from a plat map notation delineating a specific area "for street purposes only”. That case is clearly distinguishable from the case at bar.
Our conclusion that the "R-2 Zoning” notation failed to create a negative easement is founded on the presence, in both the deed and the plat, of language sufficiently clear to create similar easements and the conspicuous absence of such language as to the easement presently asserted. Among the easements and restrictions contained in the deeds of the homeowners is a provision restricting their land to residential use only. Surely if a similar restriction as to the Ibbotson property was contemplated language of similar definiteness and clarity would have been employed. This .conclusion is bolstered by the delineation on the plat of a "30' Easement For Drainage Purposes” along the southeast border of the Ibbotson tract. This express language clearly designates an easement in sharp contrast with the language relied on by the respondents which merely reflects an accurate notation of the former zoning status of the adjacent property probably included for descriptive or informational purposes.
Turning to the assertion that an easement by implication arose by virtue of these conveyances, we again find no merit in the respondents’ contentions. Our analysis reveals two lines of cases recognizing negative easements arising out of plat map notations. One, where the negative easement is apparent by the nature of the restriction and the manner in which it is indicated, and the second where the negative easement is created by virtue of a common plan.
Generally, the quasi-public nature of a plat map delineation gives rise to an easement by implication. Thus, where a party conveys realty by reference in the deed to a filed map which designates areas such as streets, parks or beaches, a negative easement has been consistently recognized (see, generally, Conveyance with Reference to Plat, Ann., 7 ALR2d 607). This principle was utilized in Weil v Atlantic Beach Holding Corp., (1 NY2d 20) where we held that an easement by implication *432 existed in favor of property owners whose deeds referred to certain maps which depicted an area marked "Boardwalk” abutting the beach and the ocean. The rationale behind this approach is that certain designations by their very nature and description impart the existence of negative restrictions. The easement sought to be imposed in the instant case does not flow naturally from the notation used, nor does it necessarily arise by its very nature (see Dalton v Levy, 258 NY 161). Since the "R-2 Zoning” notation does not create the easement within the first line of cases, we must consider whether the alleged easement arises pursuant to a general or common plan.
Restrictions on the use of property, imposing substantially common limitations on all similarly situated lots create rights in the nature of easements. (See, generally, Bristol v Woodward, 251 NY 275, where Chief Judge Cardozo noted the conflicting theories as to whether enforcement of such schemes of development derives from contract or pure equity; 3 Tiffany, Real Property [3d ed], § 868.) Once such a common plan is established the grantor and his successors are estopped from proceeding in derogation of that plan absent changed or special circumstances (compare Normus Realty Corp. v Disque, 16 NY2d 912, with Clintwood Manor v Adams, 24 NY2d 759). Whether or not a general plan of development exists is a question of fact which must be established by clear and definite proof.
Among the relevant factors are the substance of the restrictions, the language employed, the manner and form of representations and the compatibility with surrounding property. One application of this concept is found in Civic Assn. at Roslyn Country Club v Levitt & Sons, (7 NY2d 894). There we recognized a recreational easement by general plan on the basis of salesperson representations, advertising brochures, sales maps and subdivision maps to the effect that the 10-acre community club containing swimming pool, tennis courts, play and lawn areas would be solely for the residents of the development. More recently, in Steinmann v Silverman (14 NY2d 243), we ruled that there was not sufficient definiteness to sustain a common plan of single-residence plots where no map had been filed,- and no advertising or oral representations had ever been made to prospective purchasers.
The instant record fails to establish with sufficient clarity and definiteness the existence of a general plan. Here, the *433 language utilized, "R-2 Zoning”, was technical shorthand for the zoning classification and could not reasonably be expected to apprise a prospective buyer or title searcher of the existence of a common plan. Moreover there were no posted signs or advertisements in newspapers or brochures promising or exalting the benefits of a community plan. Rather the only representations made were those of Mr. Kenny and they may very well have been casual references (as the trial court found) to the only type of construction permitted at the time. In view of the numerous commercial enterprises in the immediate vicinity, including two gas stations, a barn for town maintenance equipment, a structural steel business and an Agway enterprise, all of which were visible from the respondents’ property, and the property owners’ admission that they did not see the plat map at the time of purchase, we can only conclude that no common plan for development existed.
As far as the application of the doctrine of equitable estoppel is concerned we reiterate the rule set forth in Lyon v Morgan (143 NY 505) to the effect that it should be applied with great caution when dealing with realty. Therefore we would distinguish the case of Phillips v West Rockaway Land Co. (226 NY 507) on the ground that the unequivocal oral representations, the location of the lots and the specific reservation on the map, clearly established their right to the easement claimed. Here the facts and circumstances adduced at trial failed to establish similar representations or reliance.
Accordingly, the order of the Appellate Division should be reversed, without costs, and the complaint dismissed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Fuchsberg and Cooke concur.
Order reversed, etc.