■ H. RUSSELL BERGNER et al., Respondents, v FRED KICK et al., Appellants. — Judgment reversed, on the law and facts, with costs, and complaint dismissed. Memorandum: Defendant Kick has contracted to sell approximately 10 acres of his land to defendant Conifer for development and construction of an apartment house project. Plaintiffs, owners of 16 residential lots formerly a part of Kick's land, sought to enjoin the proposed construction and Trial Term has done so. It has held, based upon oral representations Kick allegedly made to the lot owners at the time of sale, that there is an implied negative easement on all his remaining lands and he is estopped from using his remaining land for other than single-family residential use. The judgment is reversed and the complaint dismissed. In 1959, Kick acquired by inheritance and purchase a substantial tract of vacant land, part of it located in the Village of Port Byron and the remainder in the Town of Mentz. In 1967, he subdivided a small part of the acreage into 33 lots bordering a newly constructed street, Tex Pultz Parkway, which ran east and west between South Street and Route 38, and South Street. The proposed sale to Conifer involves acreage adjacent to some of these lots. Kick filed a subdivision map identifying each lot by number and specifying the dimensions and boundaries. Kick retained one lot for himself and to date he has sold 17 others. No comprehensive plan of restrictions was prepared or filed, but the lots sold were subject to specific, nonmutual restrictions written into each individual deed, including a restriction limiting construction to a one-family residence. In 1967, Kick sold a parcel adjacent to the subdivision to the Port Byron Telephone Company and it built a transmission tower on the property. He sold another lot, along with other acreage adjacent to the subdivision, for cemetery purposes in 1968. Manifestly, neither the land conveyed to the telephone company nor the land conveyed to the cemetery was developed for residential use. In addition, part of Kick's land was used as a gravel bed and apparently some of the lot owners were free to obtain fill from it. Trial Term has held defendants are equitably estopped from selling the land and constructing the apartment house solely because of oral representations allegedly made by Kick to plaintiffs. Several of the plaintiffs testified that the representations were made by reference to another, unfiled subdivision map (but see *Foro v Doetsch,* 39 AD2d 150, affd 33 NY2d 767; *Besch v Hyman,* 221 App Div 455). A court of equity may preclude a party from denying a material fact which he has induced another, who was excusably

ignorant of the true facts and who had a right to rely upon such words or conduct, to believe and act upon them, thereby suffering foreseeable injury and damages (see, generally, 21 NY Jur, Estoppel, § 15, and cases cited therein). The doctrine of equitable estoppel must be applied with great caution, however, when dealing with realty (*Huggins v Castle Estates*, 36 NY2d 427, 433) and a party claiming an implied easement must establish his right to relief by clear and convincing evidence (*Huggins v Castle Estates, supra,* at p 430; *Zentner v Fiorentino,* 52 AD2d 1036). The rule of estoppel, as related to this case, may be stated that defendant Kick may be estopped from using his remaining acreage for other than single-family residential use if he, by his culpable conduct, induced plaintiffs to buy their lots restricted to one-family residences reasonably believing that Kick's entire acreage would be restricted similarly and excusably ignorant of the true fact that it was not so restricted. The evidence in the record does not warrant application of this rule to estop defendants. There was evidence that Kick had one or more maps of his property other than the subdivision map he filed in 1967 and that he showed it to some plaintiffs when they bought their property, asserting that the future development would be residential. Thus, 11 of the 18 plaintiffs (some of who had not bought their land from Kick) testified that they saw a "more detailed" map or sketch showing a future street and that Kick told them what he intended to do with the farm. The testimony of what he said, however, varied, some witnesses testifying that he represented the entire area would be developed as single-family dwellings, others that he promised only that it would be all residential. Only three of the witnesses recalled seeing a map on which the property now offered to Conifer had been subdivided into lots. Kick acknowledged that his original intention had been to develop all his land residentially and that he had other maps of the property prepared. It was his hope, he stated, to convince the municipal authorities to construct another street in the area now proposed to be sold to Conifer because without it the land could not be subdivided profitably. Thus, while it is clear that Kick had hoped from the beginning to develop the land (indeed several of the witnesses stated that his representations were nothing more than his hope for future development), the evidence does not establish that he committed himself to develop his entire acreage exclusively for single-family residential use, and obviously, there is a great deal of difference between the future hopes of a developer and the reality which may exist later. Moreover, plaintiffs cannot reasonably claim reliance on any alleged representations by Kick. Each of the plaintiffs was represented by an attorney at the time of purchase and each lot conveyed was identified by a number from the filed subdivision map showing the land along the Parkway and South Streets. The remainder of Kick's land was shown on the map as open and undeveloped and thus gave clear and unequivocal notice that the lands involved here were not a part of the subdivision and were not restricted. Finally, it may be noted that the parties also had visual proof that the restrictions were not to be applied uniformly to Kick's entire acreage because one of the platted residential lots, plus other acreage, was sold for cemetery use and other parcels had been sold to the telephone company and the transmission tower constructed on them. Moreover, several of the plaintiffs were municipal officials. They knew of Kick's efforts to get another street built at public expense and his position that the remaining acreage could not be subdivided without it and they also had actual knowledge that the municipality had purchased part of Kick's acreage for cemetery purposes. The judgment is reversed and the complaint dismissed. All concur, except Callahan, J., who dissents and votes to affirm the judgment, in the following memorandum.

Callahan, J. (dissenting). I dissent and vote to affirm. It is improper for the majority to substitute their judgment for that of the court on the credible evidence adduced from the testimony and exhibits presented to the trial court. I agree with the determination of the trial court that the plaintiffs met their burden of proof by clear and convincing evidence as enunciated in *Huggins v Castle Estates* (36 NY2d 427) and are, therefore, entitled to judgment as against both defendants. The evidence that showed defendant Kick had exhibited to the plaintiffs a map showing his entire property devoted to single-family residences and had made statements outlining the restricted development of the land, was sufficient to prove the existence of a common scheme of development. Since the common scheme was shown by overwhelming evidence, the defendants are estopped from developing Kick's land for anything but single-family residences (see *Huggins v Castle Estates, supra; Steinmann v Silverman,* 14 NY2d 243; *Phillips v West Rockaway Land Co.,* 226 NY 507; *Guthrie v Clark,* 57 Misc 2d 709). Furthermore, defendant's parol representation concerning the imposition of restrictions on all of his land is sufficient to establish the deed restrictions to defendant's remaining lands (see *Bristol v Woodward,* 251 NY 275; *Phillips v West Rockaway Land Co., supra*). (Appeal from judgment of Cayuga Supreme Court, De Pasquale, J. — injunction.) Present — Simons, J. P., Hancock, Jr., Callahan, Doerr and Moule, JJ.