■ INCORPORATED VILLAGE OF BABYLON Respondent, v JOHN ANTHONY'S WATER CAFE, INC., et al., Appellants.—In an action for, *inter alia,* specific performance of restrictive covenants and an injunction, the defendants appeal from (1) an order of the Supreme Court, Suffolk County (Gerard, J.), entered March 25, 1987, which (a) granted the plaintiff's application for a preliminary injunction enjoining the defendants from utilizing the second floor of their premises as a discotheque or dance club and (b) denied their application for the court to recuse itself and (2) a judgment of the same court, entered October 30, 1987, which (a) granted the plaintiff's application for a permanent injunction enjoining the use or occupancy of the premises in violation of certain restricive covenants, (b) ordered the defendants to cease the use of and/or to remove certain structures from the premises and, (c) awarded legal fees to the plaintiff.

Ordered that the appeal from the order is dismissed; and it is further,

Ordered that the judgment is modified by deleting the provision thereof which awarded legal fees to the plaintiff; as so modified, the judgment is affirmed; and it is further,

Ordered that the plaintiff is awarded one bill of costs.

The appeal from the intermediate order must be dismissed because the right of the direct appeal therefrom terminated with the entry of judgment in the action *(see, Matter of Aho,* 39 NY2d 241, 248). The issues raised on appeal from the order are brought up for review and have been considered on the appeal from the judgment (CPLR 5501 [a] [1]).

On July 2, 1985, the plaintiff conveyed certain premises to John Anthony's Water Cafe, Inc. (hereinafter Anthony's) which in turn conveyed the premises to the defendant AJ and S Enterprises (hereinafter AJ and S). On May 19, 1986, Anthony's entered into an agreement leasing the premises from AJ and S. The deed from the plaintiff contained numerous covenants and restrictions concerning the construction, operation and use of the premises. Of particular importance to this action are the first and twelfth covenants which provide:

"*First*—Said vacant land shall be used solely for the operation of a restaurant and bar, which shall specialize in sit-down dining facility *[sic]* * * *

"*Twelfth*—Premises may not be used for any topless bar which permits Go-Go Dancers, Exotic Dancers, California Dancers or any similar use which permits nude or semi-nude performers.

"Premises may not be used as Discotheque or Dance Club. Nothing herein shall be construed so as to prohibit dancing, as an incidental use, in conjunction with the conduct of the restaurant/bar business provided for in ARTICLE 'FIRST' herein. Live music, when utilized, may be used subject to permission of the Board of Trustees of the INCORPORATED VILLAGE OF BABYLON".

The plaintiff seeks to enforce these covenants and to restrain the defendants from utilizing the second floor of their establishment as a discotheque or dance club. The defendants, which operate a restaurant on the first floor, contend that the second floor is utilized as a lounge with incidental dancing in conformity with the restrictive covenants.

We agree with the Supreme Court that the defendants operated a discotheque or dance club on the second floor of its premises in violation of the first and twelfth covenants and find that the Supreme Court properly granted a permanent injunction enjoining them from continuing such operation. The evidence adduced at the extensive hearing held on the matter established that the defendants employed a disc jockey who played recorded top-40 music from a disc jockey's booth; charged a separate admission for access to the club, which was open only three evenings a week and remained open after the restaurant had closed; maintained a light show with neon, flashing and whirling lights; created special effects with artificial smoke; constructed a sunken dance floor; utilized an extensive sound system and video screen; and advertised the premises as a "night spot" and "night life."

A "discotheque" is defined as "a nightclub featuring dancing to amplified recorded music" (American Heritage Dictionary 376). Black's Law Dictionary defines "incidental use" as, "[i]n zoning, use of premises which is dependent on or affiliated with the principal use of such premises" (Black's Law Dictionary 686 [5th ed 1979]).

Permit applications filed by the defendants with the State Liquor Authority and Buildings Department indicate that the intended primary use of the premises was as a fine, sit-down restaurant. The defendants were fully aware of the restrictive covenants prior to purchasing the property and, in fact, entered into extensive negotiations with their attorney and the attorney for the plaintiff which concluded with the reference to dancing as an "incidental use" being inserted into the final contract. The dancing, which occurred on the second floor of the premises, was not attendant or concomitant to the primary use of the premises and therefore, was not an "incidental use" *(see, Matter of 7-11 Tours v Board of Zoning Appeals,* 90 AD2d 486).

Nor does the record support the defendants' contention that the plaintiff should be equitably estopped from enjoining the use of their premises as a discotheque or dance club. The application of the doctrine of equitable estoppel should be applied with great caution in dealing with realty *(Huggins v Castle Estates,* 36 NY2d 427) and should not be invoked against governmental entities in the absence of exceptional circumstances *(Matter of Parkview Assocs. v City of New York,* 71 NY2d 274; *Landmark Colony v Board of Supervisors,* 113 AD2d 741). The defendants have failed to demonstrate that such circumstances exist. The defendants purchased the property with knowledge of the restrictive covenants and with knowledge that the plaintiff intended to enforce such covenants *(Ginsberg v Yeshiva of Far Rockaway,* 45 AD2d 334, *affd* 36 NY2d 706). The language contained in the covenants is clear and unequivocal and was discussed at length by the defendants, their attorney and representatives of the plaintiff. Contrary to the defendants' contentions, the language of the twelfth covenant is not susceptible to two equally plausible constructions *(see, Liebowitz v Mandel,* 114 AD2d 491) and representations were not made by the plaintiff upon which the defendants could have reasonably relied to their detriment.

The defendants' operation also violated the third and thirteenth covenants. The record amply supports the Supreme Court's determination that the defendants' premises created an increase in noise and traffic congestion which created a

hazard to the safety of the area residents and to the patrons of the premises. Moreover, its patrons and employees utilized the municipal parking area in violation of said covenants. It is clear that a court may restrain acts which are dangerous to human life, detrimental to the public health and occasion great public inconvenience and damage *(People ex rel. Bennett v Laman,* 277 NY 368).

Nor was it an abuse of discretion for the Trial Judge to refuse to recuse himself because of an alleged 1977 political affiliation with the Mayor of the plaintiff, one of many witnesses who testified on behalf of the plaintiff *(see,* Code of Judicial Conduct Canon 3; *People v Smith,* 63 NY2d 41, *cert denied* 469 US 1227, *reh denied* 471 US 1049). The record fails to substantiate the defendants' allegation that the Trial Judge was biased or predisposed to the outcome of this matter.

Finally, the judgment must be modified to the extent that legal fees were awarded to the plaintiff. " 'The law is well settled that in the absence of a statute expressly authorizing him to do so, or unless the parties have otherwise agreed or stipulated, a civil litigant may neither sue his adversary to recover fees paid to his attorney for legal services, nor, unless the court has directed taxation of such a payment in extraordinary circumstances, tax them as a disbursement' " *(Donn v Sowers,* 103 AD2d 734, 735). Since the award of counsel fees in this matter does not fall within any of the stated exceptions, the judgment must be modified by deleting therefrom the award of counsel fees. Kunzeman, J. P., Eiber, Kooper and Harwood, JJ., concur.