Matter of P.D. v S.K. (2007 NY Slip Op 52243(U))

[*1]

Matter of P.D. v S.K.

2007 NY Slip Op 52243(U) [17 Misc 3d 1133(A)]

Decided on November 16, 2007

Family Court, Nassau County

Greenberg, J.

Published by New York State Law Reporting Bureau
pursuant to Judiciary Law § 431.

As corrected in part through December 14, 2007; it
will not be published in the printed Official Reports.

Decided on November 16, 2007

Family Court, Nassau County
In the Matter of P.D.,
Petitioner,
against
S.K., Respondent.
U-2725-07

Nassau County Office of the County Attorney
Jeffrey D. Herbst, Esq.
Family Court Bureau
Attorney for Petitioner
1200 Old Country Road
Westbury, NY 11590
Potruch & Daab, L.L.C.
Michael Daab, Esq.
Deborah A. Kelly, Esq.
Attorney for Respondent
666 Old Country Road, Suite 700
Garden City, NY 11530
Mona N. Glanzer, Esq.
Law Guardian
17 Weston Place
Lawrence, NY 11559

Ellen R. Greenberg, J.
The case before the Court was referred by the Support Magistrate on the issue of equitable
estoppel in this paternity proceeding. The petitioner began a child support proceeding pursuant to
the Uniform Interstate Family Support Act (UIFSA) as she resides in Oregon, and the respondent
resides here in Nassau County.
The respondent requested genetic testing for the purpose of denying paternity. A law
guardian was assigned to represent the child. The law guardian has moved to have respondent
equitably estopped from denying paternity.
The law guardian, in support of her motion, submits an affidavit from the child who is now
eighteen years of age, born on July 26, 1989, which states that he knows the respondent to be his
father and has never known anyone other than the respondent to be his father. He further states
that the respondent has sent him cards and gifts for birthdays and other occasions which he
signed "Dad" or "Daddy".
Attached to the law guardian's motion are exhibits including the child's birth certificate with
the respondent's name listed as the father, as well as copies of cards and correspondence where
the respondent signed "Dad" or "Daddy".
The petitioner is represented by the Nassau County Attorney's office. The petitioner, the
child's biological mother, does not object to genetic testing. In fact, the mother submits a letter
requesting that the test be ordered by the Court.
The respondent is the only one of the parties who submits any historical background.
The respondent's response to the law guardian's motion for equitable estoppel explains that in
1988, while he was working as a physician in a hospital, he agreed to be a sperm donor at the
request of the petitioner, who at the time was a resident at the same hospital. He submits that
while he was married at the time, he agreed, based upon numerous promises that he would have
no rights or benefits in raising the child, nor any financial responsibilities.
The respondent provided his sperm to the petitioner who was inseminated by her same sex
partner, also a physician.
The respondent submits that he allowed his name to be put on the child's birth certificate, as
the child's father, stating, "I felt it was in K.K.'s best interests that he would have an identity
when he grew older and consented to have the birth certificate changed to reflect that I was the 
father'".
The respondent further states that from the child's birth until 1993 he did have contact with
the child, until the child, his mother, and her partner moved to the state of Oregon. The
respondent admits to making financial contributions to the petitioner, as well as sending gifts,
cards and letters to the child for birthdays, Christmas and other occasions.
The respondent also reports that, over the last fifteen years, he spoke to the child seven or
eight times over the telephone, and did see him about three years ago for a few hours when they
visited Pennsylvania.
The petitioner's papers do not address the circumstances or terms of the child's conception.
While they set forth the case law which supports the doctrine of equitable estoppel, the petitioner,
in a letter attached to her papers "ardently" requests that the test be ordered.
Family Court Act § 418(a) and § 532(a) give the Court the authority to order
genetic testing in paternity matters. It clearly states, however, that "no such test shall be ordered,
[*2]however, upon a written finding by the Court that it is not in
the best interests of the child on the basis of res judicata, equitable estoppel or the presumption of
legitimacy of a child born to a married woman."
Therefore, before this Court can order genetic testing, a determination under the doctrine of
equitable estoppel must first be made as to whether it would be in the best interests of the child to
permit the respondent to deny paternity. The doctrine of equitable estoppel "is imposed by law in
the interest of fairness to prevent the enforcement of rights which would work fraud or injustice
upon the person against whom enforcement is sought and who, in justifiable reliance upon the
opposing party's words or conduct, has been misled into acting upon the belief that such
enforcement would not be sought." Nassau Trust Co. v. Montrose Concrete Products
Corp. 56 NY2d 175, 436 N.E.2d 1265 (1982).
In paternity and child support cases, the doctrine of equitable estoppel has often been
applied. "The paramount concern in applying equitable estoppel in these cases has been and
continues to be, the best interests of the child." Jean Maby H. v. Joseph H., 246 AD2d
282 (2d Dep't 1998); Louise P. v. Thomas R., 223 AD2d 592 (2d Dep't 1996); Ettore
v. Angela, 127 AD2d 6 (2d Dep't 1987); Greg S. v. Keri C., 38 AD3d 905 (2d Dep't 2007).
The Court in Gutierrez v. Gutierrez-Delgado stated that the factors to be
considered in determining whether the best interests of a child would be served by paternity
testing include the child's interest in knowing with certainty the identity of his or her biological
father, whether the identity of others who may be proven to be his or her father is known or likely
to be discovered, the traumatic effect the testing may have on the child and the impact, if any,
that the uncertainty as to paternity might have on the father-child relationship if testing were not
ordered. 33 AD3d 1133 (3d Dep't 2006).
In order to succeed on the issue of estoppel, the moving party has the burden of proving, by
clear and convincing evidence, that he is entitled to invoke this doctrine. Bergner v. Kick,
85 AD2d 911 (4th Dep't. 1981), aff'd, 56 NY2d 795, 437 N.E.2d 1158 (1982); Sandra
S. v. Larry W., 175 Misc 2d 122 (Family Court of New York, Bronx County, 1997). "Once
there is a showing of operative facts to support estoppel, the burden shifts to the other party to
show why there should not be an estoppel in the best interests of the child." Sharon G.G. v.
Duance H.H., 63 NY2d 859 (3d Dep't 1983).
In the instant proceeding, the law guardian has met her burden by submitting affidavits that
the child has never known anyone other than the respondent as his father, and that the respondent
has sent him money, gifts and cards which are signed either "Dad" or "Daddy". Therefore, the
burden shifts to the respondent to show why estoppel should not be granted.
Here, the respondent concedes that he has sent cards, money and gifts over the last fifteen
years and that he allowed his name to be listed on the child's birth certificate as the father because
he "felt it was in the child's best interests that he would have an identity." Further, the respondent
has held himself out as the child's father. Allowing the respondent to deny paternity after
eighteen years where the child has believed the respondent to be his father would have a
traumatic effect upon the child and would be contrary to his best interests.
[*3]
In fact, the Court in Shondel J. v. Mark D 7 NY3d 320, 853 N.E.2d 618 (2006) relying
on the best interests of the child standard, declared the non biological father to be the father
where he held himself out as such even though he did so under the mistaken belief that he was
the biological father.
Therefore, based on the foregoing, the respondent is estopped from denying paternity and his
application for genetic testing is denied.
This matter is referred back to the Support Magistrate for a determination of child support
based on the mother's earning capacity, the reported income of her live-in partner as appropriate,
and the current income of the respondent.
THIS CONSTITUTES THE DECISION AND ORDER OF THE COURT.
PURSUANT TO SECTION 1113 OF THE FAMILY COURT ACT, AN APPEAL
FROM THIS ORDER MUST BE TAKEN WITHIN 30 DAYS OF RECEIPT OF THE ORDER
BY APPELLANT IN COURT, 35 DAYS FROM THE DATE OF MAILING OF THE ORDER
TO APPELLANT BY THE CLERK OF THE COURT, OR 30 DAYS AFTER SERVICE BY A
PARTY OR THE LAW GUARDIAN UPON THE APPELLANT, WHICHEVER IS
EARLIEST.
E N T E R:
________________________
Honorable Ellen R. Greenberg
Judge of the Family Court
Dated:November 16, 2007
Check applicable box :
 Order mailed on:_____________________________
 Order received in court on:_____________________