[625 NYS2d 127]

RICHARD B., Respondent, v SANDRA B. B., Appellant.

First Department, April 6, 1995

### APPEARANCES OF COUNSEL

*Joan L. Ellenbogen* of counsel, New York City *(Marcia C. Goldstein* and *Diane Krasnow Weinberger* on the brief; *Ellenbogen & Goldstein, P. C.,* attorneys), for appellant.

*Mark S. Helweil,* New York City, for respondent.

### OPINION OF THE COURT

SULLIVAN, J. P.

This is an appeal from an order directing the parties, formerly husband and wife, now divorced, and the child born during the marriage to submit to HLA blood testing and ordering a hearing on paternity and the issue of whether the former husband should be estopped from avoiding his child support obligation.

The parties, he a urologist and she a sales executive, were married in 1983. A child, a daughter, was born on July 9, 1990, at a time when the parties were living together as husband and wife. The husband, present at the birth, is listed as the father on the birth certificate, although, according to the wife, both before and after the birth, he privately questioned whether the child was his. The husband admits that he questioned his paternity as early as the fall of 1990, less than five months after the child's birth. Publicly, the husband acted as a proud father.

The parties lived together until September 1992, when the husband left the marital residence. Two months earlier, he had commenced an action for divorce. In December of 1992, the husband served a verified complaint, alleging, *inter alia,* that the wife had had an adulterous affair and that she had confided to the child's nanny that the child was not her husband's but that of her paramour. Notwithstanding, in his complaint, the husband alleged that the child was the issue of the marriage and sought custody.

On May 26, 1993, the husband and wife entered into a separation agreement, subsequently incorporated by reference into the June 17, 1993 judgment of divorce, resolving all the issues in that action, including, but not limited to, equitable distribution, custody, visitation and child support. Inasmuch as the husband claimed that he could not afford child support without a lengthy payout of the wife's $85,926 distributive award, the wife agreed to accept a 10-year payout of 40 quarterly payments of $2,148.15, interest free.

In the agreement, which provided for joint custody, the husband acknowledged that the child was the issue of the marriage. On June 3, 1993, the parties signed a supplemental agreement, the husband again acknowledging paternity. The subsequently entered judgment of divorce also recited that the child was the issue of the marriage and set forth the husband's $2,916.67 monthly child support obligation. The husband remarried shortly thereafter.

According to the husband, within three months of the entry of the judgment of divorce and after his present wife experienced difficulties in conceiving, he learned by obtaining the results of an independent HLA/DNA blood test he underwent on August 15, 1993, that he had a serious fertility problem and that he was not the child's biological father. He also claims to have discovered in July 1993 certain photographs of his former wife's paramour embracing the child. In early August 1993, he alleges, he learned, on separate occasions, from two friends that the wife had told them that he was not the child's father. He also claims that the child refers to the paramour, whom she sees weekly, as "Daddy".

On the basis of these allegations, the husband, alleging newly discovered evidence, moved, five months after the entry of the divorce judgment to set aside the child support provisions thereof. He also sought an order directing the parties and the child to submit to HLA/DNA testing and adding the paramour as a party defendant. Until at least September 1993, when he learned of the results of the HLA/DNA testing that he had undergone, the husband had visited regularly with the child and continued to nurture a loving parental relationship with her.

The IAS Court granted the motion to the extent of directing the husband, wife and child to submit to HLA blood testing, appointing a Law Guardian for the child and ordering a hearing to determine paternity and whether the father "should be estopped from seeking to cancel his child support obligation." In rejecting equitable estoppel as a basis for summarily denying the husband's challenge to paternity, the IAS Court, citing the "enormous rise in births to single mothers" and the phenomenon of "alternative families of which no husband is a part", found, *inter alia,* that "the concern about 'bastardizing' children is something of an anachronism." Enforcement of the IAS Court's directives has been stayed pending appeal. We reverse.

The presumption of legitimacy, "one of the strongest and most persuasive known to the law" *(Matter of Findlay,* 253 NY 1, 7), with its origins in the common law and "its force * * * so potent that neither spouse was competent to testify to nonaccess during wedlock" *(State of New York ex rel. H. v P.,* 90 AD2d 434, 437), while rebuttable, "will not fail unless common sense and reason are outraged by a holding that it abides" *(Matter of Findlay, supra,* at 8; *see, Matter of Fay,* 44 NY2d 137, *appeal dismissed sub nom. Buck v Hunter,* 439 US 1059). "If husband and wife are living together in the conjugal relation, legitimacy will be presumed though the wife has harbored an adulterer." *(Matter of Findlay, supra,* at 8.)

Of course, where a child's paternity is in issue, courts have not hesitated to order blood testing to overcome the presumption if such testing will settle the issue. *(See, e.g., Kwartler v Kwartler,* 291 NY 689; *Maureen G. v Kenneth G.,* 56 AD2d 644; *Anonymous v Anonymous,* 1 AD2d 312.)* While blood testing would, as the husband argues, settle the issue of the child's paternity, we are not convinced that, in the circumstances presented, he should be permitted to disclaim paternity and bastardize the child when his only apparent reason for doing so is to advance his own self-interest by avoiding his support obligations.

As this record discloses, the husband, while privately questioning his paternity, held himself out as the father, encouraging the development of a father-daughter relationship for over three years. In that regard, we take note, parenthetically, of the Court of Appeals observation that "courts will be more inclined to impose equitable estoppel to protect the status interests of a child in an already recognized and operative parent-child relationship." *(Matter of Baby Boy C.,* 84 NY2d 91, 102, n.) The husband carried his suspicions over into his complaint, alleging that the wife engaged in an adulterous relationship and that she had told the child's nanny that the child was not his but the paramour's. Notwithstanding these allegations, he sought custody, alleging that the child was the "infant issue of the marriage." In the separation agreement the husband acknowledged that the child was his and agreed to provide for her support and share in her custody. He again acknowledged paternity one week later in a supplemental agreement. And, although one week before the separation agreement was executed the husband's former counsel requested that the parties and child submit to HLA/DNA blood testing, the fact is that, in the face of his doubts about

paternity, the husband never sought to resolve the issue before execution of the separation agreement and entry of the judgment of divorce. Moreover, to accommodate the husband in meeting his child support obligations, the wife acquiesced in a lengthy payout of her equitable distribution award.

In such circumstances, the husband should be equitably estopped from pursuing his paternity challenge. While there are certain equitable considerations militating in the husband's favor, in the final analysis it is the child's best interests which are paramount. In *Mancinelli v Mancinelli* (203 AD2d 634), a case similar to the instant one, the Third Department affirmed a determination equitably estopping a father, aware prior to the child's birth of the possibility he was not the father, from asserting a nonpaternity claim two years later in a divorce proceeding, after openly holding himself out as the father. The Court held that the father should "not be permitted to bastardize the child for the sole purpose of furthering his own self-interest." *(Supra,* at 636.)

*Matter of Montelone v Antia* (60 AD2d 603), decided by the Second Department in 1977, also bears a close similarity to the facts of this case. There, like here, the father sought to avoid his support obligations by disclaiming paternity of a child born during the marriage and which he held out as his. The parties had previously executed an instrument entitled " 'agreement and order for the support of dependent(s)' " *(supra,* at 603), which became an order of the Nassau County District Court, and the father had obtained a Mexican divorce decree which provided that the mother have custody of the " 'issue of the marriage' " *(supra,* at 603). In denying the father's application to compel blood-grouping tests of the two children born during the marriage, the Court held that "blood tests should be directed only where the issue of paternity has never been conceded, expressly or implicitly, or actually litigated." *(Supra,* at 603.) The Court found that the father had conceded the issue of paternity by virtue of the support order and divorce decree and was equitably estopped from challenging paternity to avoid his support obligations. In citing this and other cases, the Second Department has had occasion to note that "[t]he unequivocal trend * * * has been to zealously safeguard the welfare, stability and best interests of the child by rejecting untimely challenges affecting his or her legitimacy." *(Matter of Ettore I. v Angela D.,* 127 AD2d 6, 13; *Matter of Campbell v Campbell,* 149 AD2d 866, 867; *see also, Michel DeL. v Martha P.,* 173 AD2d 308, 309.)

In reaching its determination that equitable estoppel does not bar an untimely disclaimer of paternity, the IAS Court relied on two cases which are, in our view, factually distinguishable. In *Queal v Queal* (179 AD2d 1070), the husband, with no reason to believe that he was not the child's father, challenged paternity six years after the divorce when he learned that the mother, who had deliberately concealed the child's parentage, had declared that he was not the father. Here, in contrast, the father, in signing the separation agreement despite his admitted doubts about paternity and serious allegations in the complaint, by word and deed misled the wife into believing that he would not pursue the issue of paternity and would abide by the terms of the agreement. Furthermore, he encouraged and fostered a father-daughter relationship for almost three years after he first had reason to question his paternity. Nor, in the analysis as to whether equitable estoppel should apply, should the fact that the husband has severed the loving bond he had with the child redound to his benefit, as the IAS Court found. Such reasoning would allow the husband to benefit from his own conduct and fails to take into account the bond and affection the child might have for him, his actions notwithstanding. It is one thing to be rejected by a father; it is quite another to lose the rights and status attached to legitimacy.

In the other case relied upon by the IAS Court, *Elizabeth A. P. v Paul T. P.* (199 AD2d 1030, *rearg denied* App Div, 4th Dept, Mar. 30, 1994), the Fourth Department found that a mother could not invoke equitable estoppel to bar the father's attempt to challenge paternity and to modify the support provisions of a judgment of divorce on the basis of blood tests of himself and the child, consented to by the mother, excluding him as the father. There, the father acted immediately upon learning of rumors concerning the paternity of the parties' third child.

Finally, the husband should be barred from setting forth a claim of newly discovered evidence or fraud under CPLR 5015 (a) (2) or (3). To succeed in a claim of newly discovered evidence (CPLR 5015 [a] [2]), it was incumbent upon the husband to show that the newly discovered evidence could not have been discovered, by the exercise of due diligence, before the entry of judgment incorporating by reference the separation agreement. To succeed in a fraud claim (CPLR 5015 [a] [3]), he had to show that he was not on notice, actual or constructive, of the wife's fraud in misleading him as to his

nonpaternity. *(See, DiIorio v Gibson & Cushman,* 161 AD2d 532, 532-533, *lv dismissed* 76 NY2d 888, 77 NY2d 989.) The complaint reflects that the husband was on notice of his wife's alleged adulterous relationship and of the possibility that the paramour was the child's father. According to his own affidavit, he knew, as early as five months after the child's birth, that he might not be the father. In fact, before the husband voluntarily entered into the separation agreement in which he acknowledged paternity, his former attorney sought to have blood testing of the child and parties but then took no further action with respect to the request. And, although he had ample opportunity to do so, he waited until after entering into the agreement, obtaining a judgment of divorce and remarrying to submit to blood tests to determine whether he was the biological father.

In addition to the belated blood test, the husband also relied on the statements of two individuals as the basis for his motion. These individuals provided the same information as had the nanny, whose account is set forth in the complaint. To that extent, the evidence is cumulative. To be relieved from a judgment under CPLR 5015 (a) (2) the evidence must be newly discovered and material, not merely cumulative. *(See, Mully v Drayn,* 51 AD2d 660.)

In the face of these facts and circumstances, the husband can hardly claim that he has uncovered evidence which could not have been discovered, with the exercise of due diligence, before the execution of the separation agreement and entry of judgment or that he was not on notice of a possible fraud.

Accordingly, the order of the Supreme Court, New York County (David B. Saxe, J.), entered July 21, 1994, which granted plaintiff's motion to vacate the provision of the judgment of divorce pertaining to the support and custody of the parties' infant child to the extent of ordering the parties and the child to submit to HLA/DNA blood testing and directing a hearing on the issue of paternity and as to whether plaintiff should be estopped from avoiding his child support obligation, should be reversed, on the law and on the facts, without costs or disbursements, and the motion denied in its entirety.

Motion seeking to strike portions of reply brief is denied.

ELLERIN, KUPFERMAN and ASCH, JJ., concur.

Order, Supreme Court, New York County, entered July 21, 1994, which granted plaintiff's motion to vacate the provision of the judgment of divorce pertaining to the support and

custody of the parties' infant child to the extent of ordering the parties and the child to submit to HLA/DNA blood testing and directing a hearing on the issue of paternity and as to whether plaintiff should be estopped from avoiding his child support obligation, reversed, on the law and on the facts, without costs or disbursements, and the motion denied in its entirety. Motion to strike portions of reply brief is denied.