Avice M.G. v Michael G. (2005 NY Slip Op 50304(U))

[*1]

Avice M.G. v Michael G.

2005 NY Slip Op 50304(U)

Decided on March 7, 2005

Family Court, Suffolk County

Spinner, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 7, 2005

Family Court, Suffolk County
Avice M.G., Petitioner,
against
Michael G., Respondent.
F XXXX-00/04C

Harriet A. Gilliam, Esq.
Attorney for Petitioner
One Union Square
Aquebogue, New York 11931
Ronald S. Zimmer, Esq.
Attorney for Respondent
6080 Jericho Turnpike, Suite 319
Commack, New York 11725
Robert I. Goldman, Esq.
Law Guardian
1207 Montauk Highway
Oakdale, New York 11769

Jeffrey Arlen Spinner, J.
ORDERED that, for the reasons hereinafter set forth, the Order to Show Cause brought by Ronald S. Zimmer, Esq., Attorney for Respondent in the within proceeding, requesting this Court issue an order granting the relief set forth herein above, is hereby denied in all respects.
The underlying matter herein was commenced by a Petition for Modification of Order Made By Family Court, executed by Respondent, MICHAEL G., on December , 2003, seeking a downward modificationof his child support obligation, based on change of circumstances.. The instant application was commenced by Respondent's Order to Show Cause, signed by Support Magistrate John Raimondi on April , 2004, and made returnable on May , 2004. Thereafter, counsel for the parties agreed to have this matter decided on the basis of all pleadings submitted to the Court on or before January , 2005, no further papers having been received after that date.
FINDINGS OF FACT
As to the issue of the alleged abandonment of the Respondent (who is the moving party herein) by the children, Respondent argues that same relieves him of his responsibilities to pay child support, as well as his obligations to contribute other support to them, including toward their medical and educational needs. Respondent supports his contention with broad, generalized and unsubstantiated accusations against the Petitioner (answering party herein), alleging she interfered with the relationship between himself and the children, and alienated them against him. In the papers submitted by Respondent, he admits being aware he had a right to institute an action for contempt against Petitioner for her alleged conduct, and that he knowingly chose not to do so, until the instant application to extinguish his financial obligations to the children.
In her answering papers, Petitioner denies alienating the children against him. Instead, she counters that she and the children endeavored to get Respondent to exercise his visitation rights, without success, other than sporadic telephone calls and rare visits, each of brief duration. While Respondent alleges Petitioner moved the children several times, failing to notify him of their new address, Petitioner maintains they moved only once since the parties divorced, that he [*2]knew the new address, communicated with them there, picked them up and dropped them off there, and even returned a video tape of child VICTOR's wrestling matches to the mailbox at that address (which is supported by the affidavit of child MELISSA). Petitioner further counters that Respondent provides nothing more than a post office address for himself, depriving the children of knowing where he actually lives. In fact, Respondent provides this Court with only a post office box as his residence.
While Respondent alleges Petitioner alienated the children from him, causing them to abandoned him, Petitioner counters that Respondent, instead, sent them a letter in 1999 stating that he did not wish to exercise his visitation rights. Still further, contrary to Respondent's claim that he has not seen the children since August , 1998, in a statement he swore to, on April , 2004, both Petitioner and child MELISSA state in separate affidavits that Respondent visited with both children MELISSA and VICTOR at Chucky Cheese in December, 2003, which Respondent did not controvert. It is noteworthy that several days after this rare visit, Respondent commenced the action for downward modification of his support obligations.
The record on this issue begins as a 'he said / she said', and evolves to a 'he said / they said', with Respondent (moving party) failing to demonstrate any course of conduct by the children to abandon him, while Petitioner and child MELISSA counter with allegations that he, in fact, engaged in a course of conduct to distance himself from the children. Thereafter, Respondent does not even attempt to address or refute their responses. Furthermore, Petitioner makes the salient point that on two prior occasions, where Respondent sought a downward modification of his financial obligations to the children, he never raised the issue of abandonment.
As to the issue of paternity, Respondent claims that two (2) years ago Petitioner informed him that child VICTOR was not his son, and therefore he seeks to have all financial obligations to said child terminated. Once again, the record is equally replete with broad, generalized and unsubstantiated allegations by Respondent, which are controverted with specific rebuttals by Petitioner, ultimately unrefuted by Respondent. Respondent entered into a Stipulation of Settlement of the divorce action with Petitioner on May , 1998, wherein he admitted paternity of child VICTOR. Thereafter, a Judgment of Divorce was entered on November , 1999, which includes an adjudication reciting Respondent's admission of paternity of child VICTOR, and establishes financial obligations attendant thereto. Respondent took no actions to disprove or overturn these admissions or adjudications in the ensuing six (6) years.
Respondent specifically asserts that, after a support hearing in 2002, Petitioner approached him in an assaultive manner outside the Family Court in Riverhead, and informed him that child VICTOR was not his. Not only does Petitioner categorically deny this in her answering papers, but her attorney submits an affirmation stating that she, the attorney, was present at the time and place mentioned, and never saw Petitioner go near Respondent, nor enter into any discussion with Respondent, outside the Courthouse. Even more compelling is the fact that Respondent then does absolutely nothing to begin any legal proceeding to terminate his legal [*3]obligations to said child.
Instead, two (2) years later, Respondent brings another action for downward modification of his financial obligations, the underlying action herein, but includes not a word alleging he is not child VICTOR's father. Represented by counsel, he thereafter makes several appearances before the Support Magistrate, and not only does he not make any allegations that child VICTOR is not his, but rather, as the Order of the Support Magistrate states, "the Court finds that the parties have voluntarily stipulated to child support for the children payable by Michael G... to Avice G... via the Support Collection Unit...". On the same page of the order, which was settled on May , 2004, the children are listed as MELISSA and VICTOR. Interestingly, Respondent's instant Order to Show Cause, raising the issue of paternity, is returnable for the first time on exactly the same date. The Court is greatly troubled by the question of why Respondent enters into such a stipulation on the same day he begins a proceeding denying his paternity of child VICTOR, and whether it is fact or strategy?
The Court finds the letter proffered by Respondent's sister to be unpersuasive, even if viewed in the light most favorable to Respondent. It is clear that the individual who signed the letter is not the same individual who wrote the letter, and certainly the presentation of this questionable document is no replacement for a witness' attendance in the courtroom. Clearly, when the issue of paternity is at the crux of the matter before the Court, the witnesses' credibility may be critical as an element to be weighed by the trier of the facts who hears the testimony and evaluates the witnesses, especially in a petition brought to determine paternity, where credibility is of paramount importance in order to address the standard of clear and convincing proof. [See McKinney's Practice Commentaries at §580-316, by Prof. Merril Sobie]. The Court has been deprived of the ability to make this analysis herein.
While Petitioner states that she does not even know, nor has heard of, the individual Respondent claims is child VICTOR's real father, what is perhaps the final blow to Respondent's attempt to alleviate himself of his financial and other obligations toward his son is the following set of facts, unrefuted by Respondent: Respondent was serving in the armed forces of the United States in 1989, stationed in Germany; Petitioner joined him in Germany in February, 1989; Petitioner became pregnant in March, 1989; child VICTOR was born on December , 1989, some ten (10) months after Petitioner arrived in Germany.
CONCLUSIONS OF LAW
Returning to the issue of the children's abandonment of the Respondent, raised by the Respondent, and the Court having found no evidence whatsoever of said claim in the pleadings and papers submitted by Respondent in support thereof, it is clear that existing caselaw strongly supports a denial of the relief requested, based on alleged abandonment. In a case squarely on point with the instant matter, the Courts found that, where the parent has caused a breakdown in communication with the child or has made no serious effort to contact the child and exercise visitation rights, the child will not be deemed to have abandoned the parent. Alice C. v. Bernard [*4]G.C., 602 NYS2d 623 (2d Dept. 1993).
In fact, the Courts have generally ruled that denial of father's application to be relieved of child support obligations on the ground that his children abandoned him were proper where the facts demonstrate the children have actually made a decision to sever their relationship with their father caused by the father's own conduct. Furthermore, in another case on point the Court ruled that the father did not make out a showing of abandonment such that he should be relieved of child support obligations, in that the child's reluctance to see her father was not abandonment, especially after he told one of the daughters not to call him again. Radin v. Radin, 209 AD2d 396, 618 NYS2d 105 (2d Dept. 1994).
Whether verbally, as in this cited case, or in writing, as in the case at bar, a parent cannot express a preference for no contact, and then seek to have the obligation for financial support vacated because of abandonment. The Court notes that in the instant matter, the children have continued to express not only a willingness, but a preference for contact with Respondent, and therefore no abandonment exists, by any definition. The Respondent's claim of abandonment is wholly devoid of both legal and factual efficacy.
Returning to the issue of paternity raised by Respondent, and the affirmative defense of equitable estoppel raised Petitioner, the Courts have routinely held that in determining whether the doctrine of equitable estoppel should apply to a particular case, the child's best interests are of paramount concern. Griffin v. Marshall, 294 AD2d 438, 742 NYS2d 116 (2d Dept. 2002) citing Matter of Greene v. Giles, 286 AC2d 390, 728 NYS2d 711; Matter of Louise P. V. Thomas R., 223 AD2d 592, 636 NYS2d 408. Furthermore, the Courts have held that the doctrine of equitable estoppel is clearly applicable in matters of paternity, child custody, visitation and support where it is invoked to further the best interests of the child. Matter of Charles v. Charles, 296 AD2d 547, 745 NYS2d 572, 574 (2d Dept. 2002); Matter of Ettore I v. Angela D., 127 AD2d 6 (2d Dept. 1987).
As a parallel, it should be noted that the doctrine of equitable estoppel as a defense may also be invoked where the failure to promptly assert a right has given rise to circumstances rendering it inequitable to permit the exercise of the right after a lapse of time. Charles v. Charles, supra . Matter of Ettore I v. Angela D., supra ; see Matter of Janis C. v. Christine T., 294 AD2d 496. If the Court were to accept the argument that Respondent had no reason to believe child V was not his, until a nasty utterance two (2) years ago by Petitioner, that still leaves unresolved why Respondent did nothing to raise the issue for an additional two (2) years, including when he instituted new actions before the Court, repeatedly appeared before the Court, and entered into a voluntary stipulation of settlement before the Court regarding those new matters he instituted.
In applying the doctrine of equitable estoppel in cases where the issue of paternity has been raised, the Courts, on a regular basis, arrive at the conclusion that the best interests of the children are generally best served by maintaining their legitimacy. Hammack v. Hammack, 291 [*5]AD2d 718, 737 NYS2d 702 (3d Dept. 2002). Even where there may be equitable considerations militating in the Respondent's favor, which this Court does not find have been established in the instant matter, in the final analysis, the child's best interests are still paramount. Hammack, supra p. 703, quoting Richard B. v. Sandra B.B., 209 AD2d 139, 143, 625 NYS2d 127 lv. dismissed 87 NY2d 861, 639 NYS2d 312. A father should not be permitted to bastardize children born during the marriage for his own self-interest; and the focus must be maintained on the principle that the overriding interest is that of the children. Hammack, supra p. 704, Richard B. v. Sandra B.B., supra p. 143, Mancinelli v. Mancinelli, 203 AD2d 634, 636, 610 NYS2d 104; Matter of Campbell v. Campbell, 149 AD2d 866, 540 NY2d 556. In short, bastardy is against public policy.
It being well settled by the Courts that the standard to be met, in cases where the doctrine of equitable estoppel has been raised as an affirmative defense, is the best interests of the child, and Petitioner herein having made the case that the facts raised before the Court support such an affirmative defense of equitable estoppel, it becomes the duty of the Respondent to establish that the best interest of the child would be better served by the granting of the Petition. See Matter of Sharon G.G. v. Duane H.H., 95 AD2d 466, aff'd 63 NYS2d 859. Stated in another manner, once the party asserting the affirmative defense of equitable estoppel has made the requisite showing of the operative facts supporting the application of equitable estoppel, it is incumbent upon the moving party to show why the doctrine should not be applied in the best interests of the child. Matter of Boyles v. Boyles, 95 AD2d 95, 466 NYS2d 762.
There is nothing whatsoever that has been advanced by the Respondent to this Court that would support a plausible argument, let alone a conclusion, that Respondent is not the father of the child VICTOR; and still further, nothing has been presented to this Court that supports a finding that said child's best interests would be served by bastardizing him at the age of 15 years. Furthermore, the Courts have applied the principle of equitable estoppel to prevent a former husband, presumed to be the father of the child born during the marriage, from disproving his paternity of the child so as to avoid his obligation to pay support. Matter of Monteleone v. Antia, 60 AD2d 603, 482 NYS 129.
In Brian B. v. Dionne B., 267 AD2d 188, 699 NYS2d 491, 492 (2d Dept 1999), the Court opined that the Plaintiff would be equitably estopped from challenging paternity to avoid his support obligations. The Court reasoned that, were Plaintiff to prevail in that situation, his actions would have been tantamount to rendering the child illegitimate in order for the Plaintiff to further his own self-interest of being relieved of the obligation to pay child support, especially five years after the divorce became final and twelve years after the child had been born. This Court find itself in a very similar position herein
With regard to both the issues of abandonment and paternity, this Court finds that Respondent has come perilously close to frivolity in proffering these specious arguments. This is most especially obvious when considering some of the tales that were presented as purported fact herein, but wholly failed to withstand the scrutiny of reasonable review. For example, the time [*6]line of Petitioner's arrival in Germany and the subsequent birth of child VICTOR, or Respondent entering into a voluntary stipulation of settlement on the issue of child support on the very date this Order to Show Cause, alleging abandonment of him by the children and denying paternity of child VICTOR, made its first appearance on the Court's docket. Further conduct of this nature would certainly be ill-advised and strain the patience of the Court.
Hence, all of the relief requested in the Order to Show Cause herein was denied in all respects, as ordered herein above; and it is further
ORDERED that the remaining matters hereunder are referred back to the Hon. John Raimond, Family Support Magistrate, for further proceedings not inconsistent with the foregoing determination.
This shall constitute the decision, judgment and order of the Court.
Dated: March 7, 2005
Central Islip, New York
_________________________________
HON. JEFFREY ARLEN SPINNER
Judge of the Family Court
PURSUANT TO SECTION 1113 OF THE FAMILY COURT ACT, AN APPEAL FROM THIS ORDER MUST BE TAKEN WITHIN 30 DAYS OF RECEIPT OF THE ORDER BY APPELLANT IN COURT, 35 DAYS FROM THE DATE OF THE MAILING OF THE ORDER TO APPELLANT BY THE CLERK OF THE COURT, OR 30 DAYS AFTER SERVICE BY A PARTY OR THE LAW GUARDIAN UPON THE APPELLANT, WHICHEVER IS EARLIEST.