[43 NYS3d 342]

In the Matter of COMMISSIONER OF SOCIAL SERVICES on behalf of N.Q., Respondent, v B.C., Appellant.

First Department, December 22, 2016

## APPEARANCES OF COUNSEL

*Law Office of Israel Premier Inyama*, New York City (*Israel Premier Inyama* of counsel), for appellant.

*Zachary W. Carter, Corporation Counsel*, New York City (*Damion K. L. Stodola* and *Richard Dearing* of counsel), for respondent.

*Lawyers for Children*, New York City (*Shirim Nothenberg* of counsel), and *Law Office of Kenneth G. Roberts, P.C.*, Larchmont (*Kenneth G. Roberts* of counsel), Attorney for the Child.

## OPINION OF THE COURT

Acosta, J.

This appeal requires us to consider a relatively narrow factual issue: whether the Family Court abused its discretion in finding that respondent father and the subject child's mother entered into a ceremonial marriage, thereby giving rise to the presumption that the child is a legitimate child of the marriage

who is entitled to support under Family Court Act § 417. Because the Family Court's decision was supported by the evidence, and inasmuch as the court's credibility assessments are entitled to significant deference, we affirm the court's determination that a ceremonial marriage occurred.

The Commissioner of Social Services (petitioner)—on behalf of the mother, N.Q., who had applied for and received Medicaid assistance for the child—filed the petition, dated September 12, 2014, seeking an order directing respondent to provide health insurance for the child. Petitioner alleged that N.Q. and respondent were married, which provided a basis on which to charge respondent with support of the child. Petitioner made the allegation of marriage on information provided by N.Q., in addition to the facts that respondent is identified as the father on the child's birth certificate and that the child shares respondent's surname.

When the parties appeared before a support magistrate, respondent argued that he and N.Q. were never married. The magistrate assigned counsel for the child and transferred the matter to Family Court to adjudicate, among other things, the factual issue of whether a marriage had occurred. Family Court set a hearing to determine whether or not there was a ceremonial marriage pursuant to section 417 of the Family Court Act. The hearing took place over several days between September and December 2014.

N.Q. testified via an Urdu interpreter to the following. She met respondent at a time when he was looking for someone to care for his daughters from a previous marriage, and she and respondent were married in an Islamic religious ceremony in late 2004. She noted that several people attended the ceremony, including respondent's friends. An imam performed the ceremony and recited religious wedding verses, which N.Q. acknowledged by saying "yes" three times; respondent also recited verses. Although there was no written marriage contract, and the couple did not obtain a marriage license, N.Q. stated that an Islamic marriage "can also be verbal." N.Q. wore traditional wedding attire, including a "large ornate scarf." She also placed a traditional henna tattoo on her body, as respondent directed. Respondent gave her gifts, including earrings, a ring, a $100 "haq mehr" ("money that the groom gives to the wife"), and clothing associated with the ceremony. Following the ceremony, there was a reception in a Brooklyn restaurant, attended by many people. She and respondent did

not engage in sexual relations until after the marriage ceremony; the child was born approximately two years later.

N.Q. further testified that she and respondent lived together for approximately three years after the wedding, including the first year of the child's life. When the child was approximately three months old, they traveled to North Carolina to visit N.Q.'s sister. A picture of respondent, N.Q., the subject child, N.Q.'s children from her first marriage, and N.Q.'s sister was admitted into evidence on consent. Respondent and N.Q. subsequently divorced pursuant to a "Taliq," an Islamic procedure by which the husband states three times his intention to divorce his wife.

N.Q. also submitted a photograph (the wedding photo), which she testified was taken on the day of the wedding, at the home of respondent's friend. According to N.Q., the wedding photo depicted herself, respondent, the imam who performed the ceremony, and N.Q.'s daughter from her previous marriage. Although N.Q. could not recall the date of the wedding or the date of the photograph, she noted that it was around the time "the kids used to go to school." A faint ink stamp on the back of the picture indicated "SPT 23."

In addition, N.Q. stated that her older daughter, who was born in 1996, attended the wedding when she was around eight or nine years old. Her daughter, who was 18 years old at the time of the hearing, also testified that she attended the wedding when she was approximately eight years old. She identified herself in the wedding photo and recalled that the picture was taken in 2004, while she was in the third grade. She believed the photograph was taken in November, at the home of respondent's friend, and that it was a fair and accurate representation of her mother's wedding to respondent. She identified the older man in the photograph as "like a priest," who read things "relating to [marriage] vows . . . in an Islamic way" from a book "like the Bible." The daughter confirmed that both respondent and her mother said "yes" when the imam asked if they wanted to be husband and wife. She also identified her mother, respondent, and her mother's friend in the picture.

Respondent denied that a ceremonial marriage had ever occurred. He testified that he had married another woman in 2001, but that they were separated. Respondent also testified that the wedding photo depicted the couple at his friend's wedding, not a wedding between N.Q. and himself. However, he admitted that he lived with N.Q., that he relied on her to raise

his children, and that he and N.Q. made efforts to develop an intimate relationship (but her boyfriend interfered). In addition, when asked at an earlier hearing before the support magistrate whether he and N.Q. were married, respondent had answered, "No, not married, it was like a commitment, like a religious law . . . [a]s girlfriend, as boyfriend."

Family Court found that petitioner met its burden of demonstrating a ceremonial marriage, and referred the matter to a support magistrate. The court acknowledged that N.Q. had significant lapses in memory, but nonetheless found her testimony credible. The court also found that N.Q.'s daughter testified credibly as to the timeframe of the wedding photo. Finally, the court found that respondent's testimony about his relationship with N.Q. and his denial that there had been a ceremonial marriage were not credible.

Respondent appeals.

"There is an established legal presumption that every person is born legitimate," a presumption which "operates . . . in any case in which legitimacy is in issue" (*Matter of Fay*, 44 NY2d 137, 141-142 [1978], *appeal dismissed* 439 US 1059 [1979]). It is " 'one of the strongest and most persuasive [presumptions] known to the law' " (*id.* at 142, quoting *Matter of Findlay*, 253 NY 1, 7 [1930]). This presumption of legitimacy has its origins in England, where it was formerly all but irrefutable (*Findlay*, 253 NY at 7 ["If a husband, not physically incapable, was within the four seas of England during the period of gestation, the court would not listen to evidence casting doubt on his paternity. The presumption in such circumstances was said to be conclusive"]). In *Findlay*, however, the Court of Appeals made clear that the presumption may be rebutted, but only if "common sense and reason are outraged by a holding that it abides" (*id.* at 8).

The presumption of legitimacy has since been codified in the Family Court Act, which provides, "A child born of parents who at any time prior or subsequent to the birth of said child shall have entered into a ceremonial marriage shall be deemed the legitimate child of both parents for all purposes of [support proceedings] regardless of the validity of such marriage" (Family Ct Act § 417).* A ceremonial marriage need not take any particular form, provided that the parties solemnly declare in

---

* While the parties appear to dispute the validity of the marriage, that issue is of no moment, because, as Family Court Act § 417 dictates, the

the presence of a clergyman or magistrate, and at least one witness, that they intend to be married (Domestic Relations Law § 12).

*Findlay* notwithstanding, the statute's use of the word "deemed" appears to make a child's legitimacy unrebuttable when the parents have entered into a ceremonial marriage (*see* Merril Sobie, Practice Commentaries, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 417 at 284). However, New York courts have continued to treat the presumption as a rebuttable one (*see e.g. Fay*, 44 NY2d at 142; *Matter of Barbara S. v Michael I.*, 24 AD3d 451 [2d Dept 2005]; *Richard B. v Sandra B.B.*, 209 AD2d 139 [1st Dept 1995], *lv dismissed* 87 NY2d 861 [1995]; *Ghaznavi v Gordon*, 163 AD2d 194 [1st Dept 1990]). To rebut the presumption, the challenger must disprove legitimacy by clear and convincing evidence (*Barbara S.*, 24 AD3d at 452; *Ghaznavi*, 163 AD2d at 195).

The court's determination after a hearing that respondent and N.Q. entered into a ceremonial marriage is supported by the evidence and the court's credibility determinations, which "are entitled to great weight, since the nisi prius court is in a better position to evaluate the witnesses" (*Matter of Benjamin L.*, 9 AD3d 153, 155 [1st Dept 2004]). Therefore, we affirm the court's factual determination that a ceremonial marriage took place.

Respondent's contention that petitioner was required to prove the ceremonial marriage by clear and convincing evidence impermissibly shifts the burden of proof from the challenger to the party relying on the presumption of legitimacy. Respondent supports this argument by citing inapposite cases in which a party sought to prove paternity, not a ceremonial marriage (*see e.g. Matter of Commissioner of Social Servs. v Julio J.*, 20 NY3d 995 [2013]; *Matter of Commissioner of Social Servs. v Philip De G.*, 59 NY2d 137 [1983]; *Matter of Commissioner of Welfare of City of N.Y. v Wendtland*, 25 AD2d

---

presumption of legitimacy operates irrespective of the marriage's legal validity. Thus, while the Attorney for the Child is correct that there is a strong presumption in favor of a valid second marriage even where one party was not yet divorced (*see Matter of Brown*, 40 NY2d 938, 939 [1976]), and that presumption is strengthened if a ceremonial marriage occurred (*Matter of Meehan*, 150 App Div 681, 683 [1st Dept 1912]), it is of no consequence, because the validity of the purported marriage is not at issue here.

The issue confronting this Court is simply whether a ceremonial marriage occurred; if so, its occurrence gives rise to the presumption of the child's legitimacy—entitling the child to support—regardless of the marriage's legal validity (Family Ct Act § 417).

640 [1st Dept 1966]). In fact, it was respondent's burden to rebut the presumption of legitimacy by clear and convincing evidence (*see Barbara S.*, 24 AD3d at 452; *Ghaznavi*, 163 AD2d at 195). He failed to carry that burden.

Finally, respondent's argument that the ceremony did not comply with the requirements of Islam (because there was no written marriage contract) is unavailing. The First Amendment generally prohibits courts from resolving disputes over religious doctrine (*see Matter of Congregation Yetev Lev D'Satmar, Inc. v Kahana*, 9 NY3d 282 [2007]; *Matter of Ming Tung v China Buddhist Assn.*, 124 AD3d 13, 18 [1st Dept 2014], *affd* 26 NY3d 1152 [2016]). In any event, as discussed above, the child's legitimacy does not depend on the validity of the marriage (Family Ct Act § 417). As long as respondent and N.Q. entered into a ceremonial marriage, the child is presumed to be legitimate and, therefore, entitled to support.

Accordingly, the order of Family Court, New York County (Jane Pearl, J.), entered on or about December 11, 2014, which, inter alia, found a ceremonial marriage between respondent and the subject child's mother, N.Q., should be affirmed, without costs.

MAZZARELLI, J.P., SAXE, MOSKOWITZ and GESMER, JJ., concur.

Order, Family Court, New York County, entered on or about December 11, 2014, affirmed, without costs.