OPINION OF THE COURT
John M. Hunt, J.
*123 Petitioner is the mother of Jordan W., born March 18, 1986. In this proceeding, filed some 10 years after the child’s birth, petitioner seeks both an order of filiation naming respondent the father of Jordan and an order of support pursuant to article 5 of the Family Court Act. Respondent has denied paternity. He alleges, the petitioner concedes, and the court finds that he is neither the biological father of Jordan nor the present or former spouse of the petitioner. While these facts would normally provide respondent with a complete defense to this action, petitioner seeks to equitably estop the respondent from asserting that defense.
Petitioner’s theory of estoppel would have this court declare respondent the father of Jordan based on petitioner’s vigorously disputed contention that respondent actually knew, as long ago as her pregnancy, that he was not, in fact, Jordan’s father and despite that knowledge, nevertheless maintained a de facto "father-son” relationship with Jordan over the past decade. Petitioner’s authority for this proposition is a distinct line of New York cases that have typically applied the law of equitable estoppel to protect a child from either an untimely denial or assertion of paternity which, if permitted, would intrude on an existing, legally recognized parent-child relationship created by marriage or prior order of filiation.* No legal relationship exists here between either of the parties or between respondent and Jordan, nor is petitioner attempting to protect the child as much as she is trying to use an estoppel as a sword to impose an affirmative obligation of support upon respondent. Since a review of the relevant case law has failed to uncover any case in which equitable estoppel was applied on these facts, this is clearly a case of first impression. Absent *124 binding legal authority on these specific issues, however, there is nothing to preclude the application of equitable estoppel principles to this case, if found to be appropriate.
Equitable estoppel is a principle that is applied in the interest of fairness to preclude a party from speaking against his own acts, commitments or representations which induced another, who reasonably relied on such words or conduct and who would suffer injury if such conduct or representations were allowed to stand (see, 28 Am Jur 2d, Estoppel and Waiver, § 28, at 629). The doctrine has been successfully invoked to prevent the enforcement of rights which would otherwise work a fraud or injustice upon the person against whom enforcement is sought (see, Nassau Trust Co. v Montrose Concrete Prods. Corp., 56 NY2d 175 [1982]). Although the Family Court is not a court of equity, the Court of Appeals approved the application of estoppel to paternity proceedings in Matter of Sharon GG. v Duane HH. (95 AD2d 466 [3d Dept 1983], affd 63 NY2d 859 [1984]) wherein the doctrine was applied to prevent a husband from being compelled to submit to blood testing.
Nonetheless, in order to prevail in her claim, the petitioner must establish that the respondent engaged in conduct which amounted to false representations of a material fact, that she relied in good faith upon that conduct, and that subsequently her position has changed to her detriment in reliance on that representation. The petitioner has the burden of proving each of the elements of an estoppel by clear, convincing and entirely satisfactory evidence, leaving nothing to inference or speculation (see, Bergner v Kick, 85 AD2d 911 [4th Dept 1981]; but see, 28 Am Jur 2d, op. cit., § 148, at 831 [while the facts relied upon to establish an equitable estoppel must be clear, positive and unequivocal in their implication, these facts need not be established by any more than a fair preponderance of the evidence]). After careful review and consideration of all of the evidence, the court is not persuaded, under either standard of proof, that the petitioner has unequivocally made out her claim of estoppel in this case. Despite her position that the respondent was aware that he was not Jordan’s father and that she relied on his representations to her that he would stand by her, this court cannot impute that knowledge to the respondent since the facts clearly establish that the petitioner never directly told the respondent that Jordan was not his child. It is also significant that the petitioner could not recall when she last had sexual relations with the respondent prior to conception, a fact not inconsistent with respondent’s belief that he *125 was Jordan’s father, having testified to ongoing sexual relations with the petitioner since 1980. All of the evidence that tended to show the nature of respondent’s relationship with the child and the quality of care that he rendered is also consistent with respondent’s belief that Jordan was indeed his biological son.
In Matter of Baby Boy C. (84 NY2d 91, 102, n [1994]), a case cited by the petitioner, the Court of Appeals observed that "courts will be more inclined to impose equitable estoppel to protect the status interests of a child in an already recognized and operative parent-child relationship”. However, while admittedly the respondent and Jordan have shared a full and active father-son relationship for 10 years, there is no legal status to protect in this case; nor is the respondent, himself, seeking to preserve a relationship with the child at this time. In fact, during the hearing it became painfully obvious that respondent’s relationship with Jordan has already suffered tremendously as a result of the protracted and acrimonious nature of this litigation. Neither one has seen or spoken to the other in over a year and a half. As the Court also noted in Baby Boy C.,
" 'judges recognize the importance of free association in a free society and rightly hesitate to use the power of the state to force a relationship one of the parties finds unacceptable’ * * *
"The foregoing * * * applies] with even greater force with respect to the power of the State to force a parent-child relationship” (at 101-102). In this case, the court believes that the respondent was genuinely surprised and sincerely disturbed by his recent discovery of Jordan’s actual paternity, which might explain, although not excuse, his complete withdrawal from the child’s life. Nonetheless, the court does not find that it would be in the child’s best interest to force a relationship that no longer exists.
It is well settled that a determination of paternity rests essentially upon a resolution of the credibility of the parties (see, Matter of St. Lawrence County Dept. of Social Servs. [Julie D.] v Terry E., 229 AD2d 672 [3d Dept 1996], citing Matter of Otsego County Dept. of Social Servs. [Jennifer M.] v Thomas N., 137 AD2d 892 [3d Dept 1988]). During the hearing, the court had the unique opportunity to observe and evaluate the demeanor and testimony of the witnesses. From the evidence presented, it is apparent that the petitioner kept Jordan’s paternity a secret from everyone, including the respondent *126 (see, e.g., Queal v Queal, 179 AD2d 1070 [4th Dept 1992] [former husband was not estopped from denying paternity after six years in light of former wife’s concealment of child’s parentage during marriage and throughout divorce proceedings]). It is also apparent that the petitioner has not been completely forthright with this court about the facts of this case from the very inception. When confronted with her petition, wherein she alleged that the respondent was Jordan’s biological father, the petitioner failed to explain, to this court’s satisfaction, her reason(s) for signing a document which was sworn to under oath, alleging patently false information. Clearly, the petitioner cannot seek to receive equity based on her own omissions and wrongdoing, since the very acts which she is alleging as the basis for an estoppel were acts committed by her, the claimant (see, 28 Am Jur, op. cit., § 35, at 642). It is also not clear to the court why the petitioner never sought to pursue paternity and support from Jordan’s true biological father, whose identity was always known to her and who was never served with notice nor joined as a party to this proceeding.
For the foregoing reasons, the court finds that the petitioner has failed to prove, by the requisite standard of proof, that the respondent assumed the role of Jordan’s father while knowing all along that the child was, in fact, not his son.
Accordingly, the petition is dismissed.

 In Matter of Ettore I. v Angela D. (127 AD2d 6 [2d Dept 1987]), the doctrine was utilized to thwart the destruction of an existing parent-child relationship and to protect the child from the stigma of being labelled illegitimate. In Matter of Barbara A. M. v Gerard J. M. (178 AD2d 412 [2d Dept 1991]), the Court refused to vacate an order of filiation previously entered upon an admission of paternity by a father, even after a subsequent, privately arranged blood test disproved his paternity. The cases of Matter of Boyles v Boyles (95 AD2d 95 [3d Dept 1983]) and State of New York ex rel. H. v P. (90 AD2d 434 [1st Dept 1982]) involved custody disputes where mothers were estopped from challenging the paternity of their husband or former husband. In Matter of Ronald FF. v Cindy GG. (117 AD2d 332 [3d Dept 1986]), visitation was actively sought by a putative father, while the cases of Matter of Campbell v Campbell (149 AD2d 866 [3d Dept 1989]), Golser v Golser (115 AD2d 695 [2d Dept 1985]), Richard B. v Sandra B. B., 209 AD2d 139 [1st Dept 1995]) and Mancinelli v Mancinelli (203 AD2d 634 [3d Dept 1994]) all involved paternity challenges by husbands during divorce proceedings for the sole purpose of avoiding support.