Matter of Armani R. v Bibi S.M. (2006 NY Slip Op 51519(U))

[*1]

Matter of Armani R. v Bibi S.M.

2006 NY Slip Op 51519(U) [12 Misc 3d 1190(A)]

Decided on June 19, 2006

Family Court, Kings County

O'Shea, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 19, 2006

Family Court, Kings County
In the Matter of Armani R., Petitioner,
against
Bibi S.M., Respondent. Andre S., Intervenor.
P-04122/04

Ann E. O'Shea, J.
Petitioner, Armani R., petitions this court for an order declaring him to be the father of Sophia K. Respondent Bibi S.M., opposes the petition. Andre S, who was married to but separated from  Bibi at the time of Sophia's conception, but not her birth, appeared in this proceeding both as Bibi's attorney and on his own behalf as intervenor to oppose Armani's paternity petition, asserting as grounds for his opposition the presumption of legitimacy and the doctrine of equitable estoppel.
Facts and Procedural History
Bibi and Andre were married in 1989. After 13 years of marriage, they separated and, on June 10, 2002, they filed a separation agreement in Supreme Court, Kings County. By summons and amended complaint dated September 26, 2002, Bibi sought a judgment of divorce on the grounds of Andre's alleged cruel and inhuman treatment. Andre filed an answer admitting Bibi's allegations of cruelty and requested the entry of a judgment of divorce incorporating their separation agreement. The judgment of divorce was signed by Supreme Court Justice Jeffrey [*2]Sunshine and entered on October 22, 2002. During the separation period, from June 2002 through at least November 2002, Bibi was involved in a sexual relationship with Armani. In August of that year while Bibi's and Armani's relationship continued, Bibi and Andre attempted a brief reconciliation and resumed their sexual relationship. Bibi became pregnant in August 2002, while she was having sexual relations with both Armani and Andre. Bibi informed both men that she was pregnant before the divorce judgment was entered on October 22, 2002. Neither Andre nor Bibi informed the court of Bibi's pregnancy or sought any delay or change in the divorce proceedings.
Sophia was born on May 7, 2003. Armani and Andre both visited with mother and child in the hospital, although only Armani was present at Sophia's birth. While in the hospital, Bibi applied for benefits under the Woman, Infants and Children ["WIC"] program, naming Armani as Sophia's other parent on her application. Bibi also identified Armani to hospital staff members as Sophia's father. To put to rest lingering uncertainty about who was Sophia's father, on May 12, 2004, Armani, Bibi, and Sophia submitted to genetic marker testing in the hospital. The hospital's DNA test results revealed to a 99.99% probability that Armani is Sophia's father.
After Sophia's birth, and for the first year of her life, Armani enjoyed regular and consistent contact with his daughter. Between May 7, 2003, and June 24, 2003, he visited with the child at least twice weekly for eight to twelve hours at a time. After a physical altercation with Bibi, on June 24, 2003, Armani filed a petition for custody and visitation, appending the results of the hospital's genetic marker testing to his petition. Two days later, Bibi filed a family offense petition against Armani in which she alleged under oath that she and Armani had a "child in common." On July 15, 2003, Bibi consented to the entry of a temporary order of visitation granting Armani visitation with Sophia on alternate weekends from Friday at 6:30 p.m. to Sunday at 6:30 p.m. That order, with some minor modifications, was continued until March 8, 2004, when the Court (Grosvenor, J.) dismissed Armani's custody and visitation petition without prejudice pending a judicial determination of paternity.
The Paternity Petition Petitioner filed the instant petition for paternity in this court on February 2, 2004. On June 15, 2004, Andre, acting as attorney for Bibi, moved to dismiss Armani's petition and, acting on his own behalf, moved to intervene in the proceeding based upon the presumption of legitimacy and the doctrine of equitable estoppel. By order dated November 29, 2004, the Court denied Bibi's motion to dismiss but granted Andre's motion to intervene. The matter was referred to Part 9.
Prior to the adjourned date, Armani subpoenaed Brooklyn Hospital Center to produce Bibi's complete medical records, her WIC application, and the Hospital's genetic testing records. Armani also subpoenaed Genetica DNA Laboratories Inc. for the record of the genetic testing it performed on himself, Bibi and Sophia. By order to show cause, Andre moved to quash Armani's subpoenae. On or about September 14, 2005, Armani submitted his opposition to Andre's motion to quash and cross-moved for an order dismissing Andre's defenses.
In a separate order to show cause filed in the Supreme Court, Kings County, Andre sought an order (1) staying the proceedings in Family Court; (2) restoring to the calendar Bibi's divorce action; (3) vacating the October 22, 2002, judgment of divorce; (4) dismissing the complaint upon which the divorce judgment was predicated; (5) amending nunc pro tunc his answer in the divorce action to add a counterclaim for divorce; and (6) granting summary [*3]judgment on his counterclaim. The order to show cause issued by Justice Jeffrey Sunshine on September 21, 2005, temporarily stayed the Family Court proceedings. On November 28, 2005, Justice Sunshine vacated the interim stay.
 On November 29, 2005, the parties appeared in this Court and the Court set a briefing schedule for Andre's motion to quash and Armani's motion to dismiss Andre's presumption of legitimacy and equitable estoppel defenses. The Court also directed that all other pre-trial motions be filed by January 17, 2006. Despite that directive, Bibi filed a motion to dismiss the paternity petition on grounds of improper service of process on January 31, 2006.
On February 27, 2006, after extensive oral argument, this Court, ruling from the bench, granted Armani's motion to dismiss Andre's presumption of paternity and equitable estoppel defenses, denied Bibi's motion to dismiss the petition for improper service, denied Andre's motion to quash Armani's subpoenae, and ordered that all three parties and the child submit to genetic marker tests. Since then, the parties and the child did undergo genetic marker tests. The results of those tests, which were submitted to this Court by Armani in support of his subsequently filed motion for entry of an Order of Filiation, established to a 99.99% probability that Armani is Sophia's father and excluded Andre as a possible father. Armani's motion was granted on the record on June 19, 2006. The reasons for those decisions follow.
Petitioner's Motion to Dismiss Intervenor's Defenses
In opposition to Armani's petition to establish paternity, Andre advanced two defenses. He first claimed that because the child was conceived during his marriage to Bibi, a presumption of legitimacy exists, foreclosing further inquiry. Alternatively, Andre contended that the DNA tests taken at the time of Sophia's birth should be disregarded on the grounds of equitable estoppel, as it would be contrary to Sophia's best interests to disrupt the relationship that he allegedly fostered and that has allegedly developed between Sophia and him. In his cross-motion, Armani sought to dismiss these defenses on the grounds that neither doctrine applies in this case.
As a preliminary matter, neither the presumption of legitimacy of a child born within a marriage nor order of a court declaring someone else to be a child's father limits the right of a child's biological father to bring a paternity action to declare him to be the child's father (see Tyrone G. v. Fifi N., 189 AD2d 8, 14 [1st Dept 1993]). Nor can a mother's objection to a declaration of paternity foreclose an unwed father's separate and independent right to assert paternity in his own proceeding [id]. Upon request, a putative father must be granted a DNA test absent a written finding by a court that it is not in the best interests of a child for the tests to be taken on the basis of res judicata, equitable estoppel or the presumption of legitimacy of a child born to a married woman (Family Ct Act § 418 [a]); Hammack v. Hammack, 291 AD2d 718, 719 [2d Dep't 2002]). Armani's right to proceed with his paternity petition is clear.
Andre's claim that the presumption of legitimacy and equitable estoppel foreclose Armani's assertion of paternity must be dismissed on two grounds. First, those issues have already been litigated elsewhere. Second, the defenses are without merit.
In a separate proceeding in Kings County Supreme Court, involving identical parties and based upon identical facts, Supreme Court Justice Jeffrey Sunshine, on January 9, 2006, issued a decision in which he concluded that neither the presumption of legitimacy nor the doctrine of equitable estoppel is sustainable as a defense to petitioner's claimed paternity. Having instituted the proceeding in which such determination was made and having had a full and fair [*4]opportunity to litigate those issues in Supreme Court, Andre is not only collaterally estopped from advancing the same arguments with respect to the same issues in this Court (see Mary SS. v. Charles TT., 209 AD2d 830, 831 [3d Dept 1994]), he is barred by the doctrine of res judicata from doing so (see O'Connell v Corcoran, 1 NY3d 179 [2003]).
Moreover, on the merits, when the parties appeared for oral argument on all the pending motions in this case, this Court independently reached and announced the same conclusions as Justice Sunshine did.
The doctrine of equitable estoppel is imposed by law in the interest of fairness to prevent the enforcement of rights, which would work a fraud or injustice upon the person against whom enforcement is sought and who, in justifiable reliance upon the opposing party's words or conduct, has been misled into acting upon the belief that such enforcement would not be sought (see Nassau Trust Co. v Montrose Concrete Prods. Corp., 56 NY2d 175, 184 [1982]; Matter of Robert P. v. Vito C., 2005 NY Slip Op 9101 (2d Dep't 2005]); Sandra S v. Larry W., 175 Misc 2d 122, 124 [Fam. Ct. Bronx Co. 1997]). An estoppel also may be imposed where the failure to promptly assert a right has given rise to circumstances rendering it inequitable to permit the exercise of that right (Matter of Robert P. v. Vito C., 2005 NY Slip Op 9101 [2d Dep't 2005]; see also Ellis v. Griffin, 308 AD2d 449 (2d Dept 2003). Thus, in order to impose an estoppel precluding Armani from seeking or introducing the results of DNA testing in support of his paternity petition, the Court would have to first find that Armani engaged in conduct evidencing an intention to forego enforcement of his paternal rights or that he unfairly delayed the assertion of those rights, and that Andre, acting in justifiable reliance on such conduct, assumed and fostered a father-daughter relationship with Sophia.
The undisputed facts do not support any such findings. Andre and Bibi were separated at the time of the conception of the child. Bibi admittedly was engaged in sexual relations with Armani during the period pertinent to conception, and Andre was aware of their relationship. Armani was present at Sophia's birth, while Andre was not. Armani promptly sought genetic marker testing while Bibi and the baby were still in the hospital to resolve any questions as to Sophia's paternity, while Andre never submitted to genetic marker testing until this Court ordered him to do so. The hospital tests established, to a 99.99% probability, that Armani was Sophia's father, and Andre was aware of those results. Andre refused to be listed on the child's original birth certificate absent proof that he was Sophia's father. Armani was in court within a month of Sophia's birth seeking through his petition for custody and visitation to secure his paternal rights and responsibilities, while it took Andre more than a year and a half to assert his purported paternal rights. Armani exercised his visitation rights with Sophia for as long as Bibi and the court permitted. Armani's actions, far from evidencing a lack of interest in asserting his parental rights, demonstrated that he fully intended to assert those rights despite the obstacles that were put in his path, largely by Bibi and Andre. Moreover, Andre was well aware of Armani's consistent attempts to establish and enjoy his rights as Sophia's father and cannot credibly claim that he was misled by Armani's conduct into forging a parent-child relationship with Sophia.[FN1] To the extent Andre and Bibi have misled Sophia into believing that Andre is her [*5]father, they not only deliberately subverted Armani's rights, they have not acted in the child's best interests.
Andre's reliance upon the presumption of legitimacy similarly is misplaced. As a threshold matter, the presumption of legitimacy defense stands as a bar to a paternity proceeding only under circumstances involving a "child born to a married woman." As Andre and Bibi were divorced on October 22, 2002, and Sophia was born on May 7, 2003, Sophia is not a child "born to a married woman" within the meaning of Family Court § 418. Andre's lack of success in reopening the divorce proceeding in order to make Sophia into a "child born of a married woman" simply confirms this conclusion.
Moreover, the presumption of legitimacy, as powerful as it may be, can be rebutted by competent evidence excluding Andre as the father of the child (see Matter of Barbara S. v. Michael I., 2005 NY Slip Op 9309, 1 [2d Dept 2005]). The presumption is amply rebutted in this case by the undisputed facts outlined above. Those facts compel a finding that Andre is not Sophia's father and could never have seriously considered himself to be her father. As not a single fact has been adduced that would warrant any other conclusion, the presumption of legitimacy has thus been rebutted.
Accordingly, Andre's defenses based upon equitable estoppel and the presumption of legitimacy are dismissed.
Respondent's Motion to Dismiss the Petition
Bibi's motion to dismiss the petition on the grounds that service was improper is untimely. This Court ordered that all pre-trial motions be filed and served by January 17, 2006. Bibi's motion was filed on January 31, 2006. Moreover, the motion is wholly without merit. Family Court Act § 167 provides that whenever a person to whom a summons is directed physically appears on the adjourned date, it shall conclusively be presumed that the summons was duly served, unless an objection to the manner of service is made on the return date. On the first return date, July 29, 2004, neither Petitioner nor Bibi appeared. On the next adjourned date, November 29, 2004, both Petitioner and Bibi appeared, and service was marked complete. As Bibi failed affirmatively to contest service on that date, the conclusive presumption of proper service applies, foreclosing further inquiry. Furthermore, having appeared and defended on the merits by interposing a motion to dismiss the paternity petition on June 15, 2004, prior to the first return date, and having otherwise affirmatively participated in the action for the past year and a half other than by objecting to jurisdiction, Bibi waived any objection she might have had and it is unimportant how process was served or that it was served at all (see e.g. In re Dell, 56 Misc 2d 1017, 1018-1019 [Fam. Ct. Monroe Co. 1968]). Accordingly, Bibi's motion to dismiss the paternity petition on the grounds of improper service is denied.
The Motion to Quash the Subpoenae
Andre's motion to quash judicial subpoenae served by Armani upon the Brooklyn Hospital Center and Genetica DNA Laboratories Inc., has been rendered moot by entry of the order of filiation declaring Armani to be Sophia's father. Andre has no standing to object to the [*6]subpoenae and the records themselves are unnecessary. 
Petitioner's Motion for Entry of an Order of Filiation To Dismiss Intervenor from These Proceedings
And For An Order of Visitation
On June 5, 2006, Petitioner filed a notice of motion requesting entry of an Order of Filiation based upon the results of the genetic marker tests ordered by the Court, dismissing Andre from these proceedings, and awarding petitioner visitation with Sophia. No responses, in opposition or otherwise, were submitted.
Based upon the evidence in the record, as outlined above, including the results of the genetic marker test, and considering the totality of the circumstances, it is the Court's conclusion that it is in Sophia's best interest to know the identity of her biological father and that her father be permitted to pursue the rights, privileges and obligations of a father to his child. Therefore, a final order of filiation, declaring Armani to be the father of Sophia, a/k/a Sofyah K-S, shall enter.
Andre no longer has standing to participate as a party in these proceedings, which involve
Armani's rights to visitation with his daughter, and he may no longer do so.
Armani shall have therapeutic visits with Sophia under the supervision of Diane Hesseman, MSW, as may be arranged by the parties and the Law Guardian.
 This constitutes the decision and order of this Court.
Dated: June 19, 2006E N T E R :

 ______________________________
Ann E. O'Shea, J.F.C.
Footnotes

Footnote 1: In fact, when Andre wore his other hat as counsel to Bibi, Andre sought to cement Armani's paternity claim by moving to dismiss his paternity petition on the grounds that paternity already had been established, thereby conceding rather than challenging Armani's paternity.