Matter of Department of Social Servs. v D.V. (2007 NY Slip Op 50802(U))

[*1]

Matter of Department of Social Servs. v D.V.

2007 NY Slip Op 50802(U) [15 Misc 3d 1122(A)]

Decided on April 11, 2007

Family Court, Nassau County

Lawrence, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected in part through April 19, 2007; it will not be published in the printed Official Reports.

Decided on April 11, 2007

Family Court, Nassau County
In the Matter of a Proceeding pursuant to Article 5 of the Family Court Act Department of Social Services, o/b/o J.Y., Petitioner,
against
D.V., Respondent.
P-XX

Nassau County Dept. of Social Services
Family Court Bureau
Jeffrey Herbst, Esq., Deputy County Attorney
Nassau County Attorney's Office, Family Court Bureau
Attorney for Nassau County Dept. of Social Services
Robert I. Kurtz, Esq.
Attorney for J.Y.
Ann Alves, Esq.
Legal Aid Society of Nassau County
Attorney for D.V.
Paul B. Guttenberg, Esq.
Attorney for L.B.
Roberta N. Kaufman, Esq.
Law Guardian for K.M.V.

Richard S. Lawrence, J.
This matter was referred to this Court by Support Magistrate Patricia Bannon for determination as to whether equitable estoppel may be invoked by the Respondent to prevent genetic testing in this paternity petition.
Before setting forth the procedural history of this matter, the Court will list the parties involved to avoid confusion. The child at issue is K.M.V., born January 1, 1997 (ten years old). The child's mother is L.B. J.Y. is the mother of L.B. and is the child's maternal grandmother. L.B. is currently married to T.B. D.V. is the child's alleged biological father.
On or about July 26, 2006, the Nassau County Department of Social Services, on behalf of J.Y., filed a petition requesting that an Order be made declaring D.V. the father of the child, K.M.V., and for an order of support. The Court docket reflects that when the matter came before the Support Magistrate, the issue of equitable estoppel was raised. The Support Magistrate assigned a Law Guardian, Roberta Kaufman, Esq., to represent the child and the matter was adjourned for the Law Guardian to speak with the child. On the adjourned date, the Law Guardian informed the Support Magistrate that the child "knows" that the Respondent is her "biological" father, but calls another man "Daddy". As a result, the matter was referred to this Court for inquiry into the issue of equitable estoppel.
This Court assigned Robert Kurtz, Esq., 18-b counsel to represent J.Y.; Paul B. Gutten-berg, Esq., 18-b counsel to represent L.B.; and the Nassau County Legal Aid Society to represent the Respondent, D.V. After conference with the parties, this Court established a schedule for the submission of papers on this issue, and the matter was set for reserved decision.
The Respondent filed a Notice of Motion on February 5, 2007, requesting that this Court dismiss the paternity petition, on the grounds that the Petitioner should be equitably estopped from adjudicating the Respondent as the child's father.[FN1]Respondent contends that L.B. should be estopped from naming someone other than her husband as the child's father. Respondent alleges that the mother has engaged in conduct that amounts to "false representations of material fact," namely that she has held her husband out to be the child's father. Respondent states that the mother has never told the child not to refer to her husband as her father, and that Mr. B. has been in contact with the child for a significant part of her life. The Respondent alleges that L.B. told the child, when she was seven years old, that Mr. B. was not her father. Respondent denies taking part in naming the child, and he had no idea that the child existed until he received a letter from Petitioner this past year. Respondent does not have a father-daughter relationship with this child, and has not had any visitation with her. In the event the court adjudicates him to be the child's father, he has no interest in having a relationship with her. The Respondent believes that it is in the child's best interests not to have her current father-child relationship thwarted by a late attempt to adjudicate him as the father.
The mother, L.B., filed an opposing affidavit on or about February 23, 2007. Ms. B. details that she and the Respondent lived in the same building prior to and after the child's birth; she engaged in sexual relations with the Respondent nine to ten months prior to the child's birth; Respondent was aware she was pregnant; Respondent refused to attend the hospital when the child was born; she gave the child Respondent's last name and listed the Respondent on the child's birth certificate;[FN2]the Department of Social Services filed numerous petitions since the child's birth to adjudicate Respondent the father, but these petitions were dismissed because Respondent could not be served; when the child was seven years old, she believed she "possessed sufficient maturity and understanding" to tell her that her "biological" father is the [*2]Respondent; and the child knows no other man as her father other than the Respondent. Ms. B.
asks that this Court deny the Respondent's application and establish the Respondent as the child's father, as the child wants to "know who her father is" and "meet him".
The Law Guardian filed an affirmation in opposition on or about February 28, 2007, in opposition to Respondent's "order to show cause" (the Court is not aware that an order to show cause has been filed in this matter and can only assume that the Law Guardian is referring to Respondent's moving papers, which were brought on by notice of motion). The Law Guardian states that the child learned that her "biological" father was the Respondent when she questioned her mother about her last name. This conversation took place when the child was seven years old and since that time, she has expressed a desire to meet the Respondent. The Law Guardian states that there is no fraud in this case, because although Mr. B. is married to the child's mother, he has never held himself out as the child's father. The child does not even live with the mother or Mr. B.; she lives with her maternal grandmother. The child only sees her mother and Mr. B. on the weekends and Mr. B. has been incarcerated for a "good portion" of the child's life. The Law Guardian asserts that it is "about time" the child had "closure regarding this matter" and the child should know who her real father is. The Law Guardian speculates that if Respondent is adjudi-cated to be the "biological" father, he may want to have a relationship with the child.
The maternal grandmother, J.Y., filed an affidavit on or about March 1, 2007. The maternal grandmother states she has had custody of the child since 1998, per order of the Nassau County Family Court, and the child has resided with her since her birth.[FN3]Her daughter L.B. has been married to T.B. since 2000. The child has had no contact with the Respondent and regards T.B. as her "father". The child refers to Mr. B. as "Daddy".
Finally, the Department of Social Services, by Deputy County Attorney Jeffrey D. Herbst, Esq., filed an affirmation in opposition on or about March 2, 2007, requesting that the motion to dismiss be denied, and that Respondent be ordered to submit to a paternity test.
The Family Court Act ("FCA") mandates that genetic testing may not be ordered without the Court first making a written finding that it is not in the best interests of the child on the basis of equitable estoppel. FCA section 418 (a).
The doctrine of equitable estoppel is a remedy based in equity that is invoked to prevent
the enforcement of rights which would work fraud or injustice upon the person against whom enforcement is sought and who, in justifiable reliance upon the opposing party's words or con- duct, has been misled into acting upon the belief that such enforcement would not be sought. [*3]Nassau Trust Co. v. Montrose Concrete Products Corp., 56 NY2d 175, 184 (1982). See In the Matter of Shondel J. v. Mark D., 7 NY3d 320, 326 (2006).
Courts have regularly applied this doctrine as a defense to preclude a party from being compelled to submit to genetic testing. See In the Matter of Lorie F., v. Raymond F., 239 AD2d 659 (3rd Dept. 1997) and Jean Maby H., v. Joseph H., 246 AD2d 282 (2nd Dept. 1998).The moving party bears the burden of proof to show by clear and convincing evidence that he or she is entitled to invoke this doctrine. See Sandra S. v. Larry W., 175 Misc 2d 122 (Fam Ct of New York, Bronx Cty, 1997), M.S. v. K.T., 177 Misc 2d 772 (Fam Ct of New York, Rockland Cty, 1998), In the Matter of Commissioner of Social Services, o/b/o R.B. v. W.L, 9 Misc 3d 973 (Fam Ct of New York, Nassau Cty, 2005, Lawrence, J.), 57 NY Jur Estoppel, Ratification, and Waiver, section 72.
If the Petitioner fails to make a prima facie showing of his or her entitlement to invoke the doctrine of equitable estoppel, then the motion must be denied. See Arma Textile Printers v. Spectrachem, Inc., 254 AD2d 382 (2nd Dept. 1988). 
When the moving party does not make such a prima facie showing, he or she is not entitled to a hearing. See Mobley v. Ishmael, 285 AD2d 648 (2nd Dept. 2001), Glenn T. v. Donna U., 226 AD2d 803 (3rd Dept. 1996).
The best interests of the child is the ultimate concern in an equitable estoppel case and the evidence presented to the court must be construed from the child's perspective. See In the Matter of Louise P. v. Thomas R., 223 AD2d 592 (2nd Dept. 1996), In the Matter of Willie Griffin v. Cynthia Marshall, 294 AD2d 438 (2nd Dept. 2002), and In the Matter of Greg S. v. Keri C., 2007 NY Slip Op. 02764 (2nd Dept. 2007).
The factors that must be considered in determining whether the best interests of a child would be served by paternity testing include the child's interest in knowing with certainty theidentity of his or her biological father, whether the identity of others who may be proven to be his or her father is known or likely to be discovered, the traumatic effect the testing may have on the child, and the impact, if any, that the uncertainty as to paternity might have on the father-child relationship if testing were notordered. In the Matter of Gutierrez v. Gutierrez-Delgado,
33 AD3d 1133, 1134 (3rd Dept. 2006). 
Estoppel is therefore applied to prevent the destruction of an intact parent-child [*4]relationship. See In the Matter of Peter BB. v. Robin CC., 256 AD2d 889 (3rd Dept. 1998). 
After considering the papers submitted by the parties, this Court is not convinced that the Respondent may properly invoke estoppel to prevent genetic testing in this matter.
First, the Nassau County Department of Social Services stands "in the shoes"of J.Y., due to the public assistance benefits provided on behalf of the child. It has not been demonstrated that the Department of Social Services has engaged in any "fraud" which would bring harm to the Respondent. The Department is merely seeking an establishment of paternity for the recoup-ment of public welfare funds expended on behalf of this child.
Second, there is no "parent-child" relationship which the Court must protect between the child and Mr. B. This child does not live with the mother or Mr. B. The child lives with the maternal grandmother pursuant to an order of custody. The child has known for a significant period of time that Mr. B. is not her biological father; the mother told the child as much three years ago. It is irrelevant that the child refers to Mr. B. as "Daddy". The child understands that Mr. B. is simply her mother's husband. The mother's marriage to Mr. B., which occurred approximately three years after the child's birth, does not create an estoppel issue.
Third, it does not matter that the Respondent has not had "any significant relationship with K.," did not know of the child's existence, and does not plan on having a relationship with her if adjudicated her father. These assertions similarly do not create an estoppel issue when none exists.
This Court cannot find that estoppel applies in this matter. This case is about the Depart-ment of Social Services attempting to establish paternity in an effort to recoup monies spent on behalf of the child K. There is insufficient evidence to show that the child and Mr. B. have a relationship that must be protected.
As the Respondent has not shown by clear and convincing evidence that he is entitled to the relief he has requested, his application to preclude genetic testing on the basis of equitable estoppel is denied. As a result, a hearing is not necessary on this application.
[*5]
In accordance with FCA section 418(a), this Court finds that estoppel does not apply to preclude genetic testing in this instance. Therefore, this matter is referred to the Support Magi-strate on April 25, 2007 at 9:00 am for genetic testing and for further proceedings.
This Constitutes the Decision and Order of this Court.
Dated: April 11, 2007.
TO:

Footnotes

Footnote 1:This Court has taken judicial notice of a prior custody proceeding that occurred before Honorable John B. Pessala of this Court, wherein the Nassau County Legal Aid Society represented T.B., L.B.'s current spouse. It should be noted that in the event there are any future proceedings, the Legal Aid Society must be precluded from representing either T.B., or D.V., due to this conflict of interest. 

Footnote 2:The support docket contains the child K.'s birth certificate. Although not determina-tive on the issue of equitable estoppel, this Court notes that the Respondent's name does not appear on the birth certificate, although the child's last name is "V.".(See Ms. B.'s affidavit, page 2, paragraph 5). 

Footnote 3:Judge Brennan of this Court issued an order of custody to the maternal grandmother in 1998.