Matter of K.J.P. v V.B. (2007 NY Slip Op 51658(U))

[*1]

Matter of K.J.P. v V.B.

2007 NY Slip Op 51658(U) [16 Misc 3d 1131(A)]

Decided on August 29, 2007

Family Court, Nassau County

Lawrence, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected in part through September 14, 2007; it will not be published in the printed Official Reports.

Decided on August 29, 2007

Family Court, Nassau County
In the Matter of a Proceeding pursuant to Article 5 of the Family Court Act K.J.P., Petitioner,
against
V.B., Respondent.
XXXXX

ISA KANTOR, ESQ.
KANTOR & KOPMAN, ESQS.
Attorney for Petitioner
JOHN SCHLINGHEYDE, ESQ.
Attorney for Respondent
JILL W. BAUER, ESQ.
Law Guardian

Richard S. Lawrence, J.
This matter was referred to this Court by the Support Magistrate for determination as to whether the Petitioner may invoke the doctrine of equitable estoppel to deny Respondent's request for genetic testing in this paternity proceeding.
This Court assigned "18-b" counsel to represent both the Petitioner and the Respondent, as well as a Law Guardian to represent the child. After conference, a schedule was established for submission of papers on the issue of equitable estoppel.
This Court has reviewed the docket and procedural history of this matter. The Petitioner filed a petition on April 4, 2007, requesting that an Order be made declaring the Respondent the father of the child, T.M.. The parties appeared for conference before the Support Magistrate on May 2, 2007. The Support Magistrate's notes indicate that the Petitioner related the child has always regarded the Respondent as his father. As the Respondent denied paternity and requested genetic testing, the matter was referred to this Court for determination on the issue of equitable estoppel.
The Law Guardian's Notice of Motion contends that the Respondent should be equitably estopped from such testing. An Order of Filiation, according to the Law Guardian, should immediately be entered declaring the Respondent to be T.M.'s father. The Petitioner and the Respondent have another child together, N., for whom there is already an established support order. The Respondent has exercised visitation with N., and T.M. has joined in this visitation time, which included interaction with the Respondent's family. These visits continued, until the
[*2]
Respondent "lost interest" in both children. Nevertheless, T.M. has always believed that Respondent is his father and no one has ever "told him otherwise." T.M. especially identifies N. to be his "full" sibling. The Law Guardian also submitted an affirmation in further support of her application.
The Petitioner filed an affidavit in support, which states that the Respondent is T.M.'s father. There is no name on the child's birth certificate. Petitioner explains this by stating that she stopped "seeing" the Respondent before T.M. was born due to acts and threats of violence. The Petitioner maintains that the Respondent "knew" about T.M., as she told Respondent the child was "his" when T.M. was two years of age. The Respondent's mother "gave gifts at Christmas time" to T.M. Respondent, however, has only acknowledged T.M. as N.'s brother. The Peti-tioner has never identified any other man to be T.M.'s father.
The Respondent filed an affidavit in opposition, which states that he is not T.M.'s biological father. The Respondent only identifies T.M. to be the half-sibling of his daughter, N. The Respondent learned for the first time that Petitioner believed him to be T.M.'s father when he was served with this paternity petition. Until that time, he had "no idea" that the Petitioner or T.M. thought he was T.M.'s father. In fact, T.M. refers to Respondent only as "Vince." The Respondent admits to "socializing" with T.M., but as limited by the visitation with his daughter. Respondent might have brought a small gift for T.M., but this was only if he brought one for his daughter. The Respondent emphasizes that he never held himself out to be T.M.'s father, and had no reason to believe T.M. identified him as his father. Finally, in denying paternity of T.M., Respondent stresses that it would be "ludicrous for me to have to state to every child that I ever met I am not your father'."
Equitable estoppel may be invoked to prevent the enforcement of rights which would work fraud or injustice upon the person against whom enforcement is sought and who, in justifi-able reliance upon the opposing party's words or conduct, has been misled into acting upon the belief that such enforcement would not be sought. Nassau Trust Co. v Montrose Concrete Products Corp., 56 NY2d 175, 184 (1982).
As in this case, it may be raised as a defense in a paternity matter to shield a party from being compelled to submit to genetic testing. See Lorie F. v Raymond F., 239 AD2d 659 (3rd Dept. 1997). The moving party bears the burden to show, by clear and convincing evidence,
that he is entitled to invoke equitable estoppel. See Sandra S. v Larry W., 175 Misc 2d 122 (Fam Ct of New York, Bronx Cty, 1997); M.S. v K.T., 177 Misc 2d 772 (Fam Ct of New York, Rockland Cty, 1998); In the Matter of Commissioner of Social Services, o/b/o R.B. v. W.L , 9 Misc 3d 973 (Fam Ct of New York, Nassau Cty, 2005, Lawrence, J.), 57 NY Jur. Estoppel, Ratification, and Waiver, section 72.
As such, it is incumbent upon the petitioner to submit evidentiary proof in admissible form, in order to set forth, prima facie, the entitlement to the relief sought. See Zuckerman v City
[*3]
of New York, 49 NY2d 557 (1980). The moving party must therefore make a prima facie showing before a hearing may be granted. See Mobley v Ishmael, 285 AD2d 648 (2nd Dept. 2001); Glenn T. v Donna U., 226 AD2d 803 (3rd Dept. 1996).
At the time of such a hearing, the determination of paternity rests essentially upon a resolution of the credibility of the parties, and it is necessary for the court to carefully consider, evaluate and observe the demeanor and testimony of the witnesses. See Sandra S. v Larry W., supra at 125.
The evidence should be construed from the child's perspective and the factors to be considered in determining whether the best interests of a child would be served by paternity testing include the child's interest in knowing with certainty the identity of his or her biological father, whether the identity of others who may be proven to be his or her father is known or likely to be discovered, the traumatic effect the testing may have on the child, and the impact, if any, that the uncertainty as to paternity might have on the father-child relationship if testing were not ordered. In the Matter of Gutierrez v Gutierrez-Delgado, 33 AD3d 1133, 1134 (3rd Dept. 2006).
Importantly, the paramount concern in an equitable estoppel case is the best interests of the children. See In the Matter of Louise P. v Thomas R., 223 AD2d 592 (2nd Dept. 1996); Jean Maby H. v Joseph H., 246 AD2d 282 (2nd Dept. 1998); In the Matter of Willie Griffin v Cynthia Marshall, 294 AD2d 438 (2nd Dept. 2002) and In the Matter of Greg S. v Keri C., 38 AD3d 905 (2nd Dept. 2007).
Ultimately, a court shall not order genetic testing in a paternity matter without first issuing a written finding that it is not in the best interests of the child on the basis of equitable estoppel. FCA §418(a).
In the instant case, questions of fact have been raised in the papers submitted which this Court cannot properly determine without a hearing. This Court finds that the Petitioner has demonstrated prima facie the entitlement to a hearing on this matter. This Court shall therefore
conduct a hearing to determine whether the Petitioner may invoke equitable estoppel to bar Respondent's request for genetic testing.
THE PARTIES AND COUNSEL ARE DIRECTED TO APPEAR FOR HEARING ONSEPTEMBER 19, 2007 AND SEPTEMBER 20, 2007, AT 2:00 P.M.
This Constitutes the Decision and Order of this Court.
Dated: August 29, 2007.